**Roy CLARK, Petitioner-Appellant,**

v.

**Ross MAGGIO, Jr., Warden, Louisiana State Penitentiary, and William J. Guste, Jr., Attorney General of the State of Louisiana, Respondents-Appellees.**

No. 83–3162.

United States Court of Appeals, Fifth Circuit.

July 30, 1984.

**472**

Roy Clark, pro se.

George M. Papale, Gretna, La. (Court-appointed), for petitioner-appellant.

·Abbott J. Reeves, Research and Appeals, Gretna, La., for respondents-appellees.

Before RUBIN, JOHNSON and HIGGINBOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A defendant convicted by a Louisiana state court of first degree murder in the course of an armed robbery and sentenced to life imprisonment seeks habeas corpus. We affirm the district court's conclusion that the state judge's charge did not abridge the constitutional rights of the accused. We find no prejudice to the defendant as a result of the state's failure to prove that the accused had the specific intent to kill the victim, a necessary element of first degree murder if the death penalty is imposed but not an element of felony homicide. We therefore deny relief for the state's failure to adduce evidence of such intent. Further, finding that the admission of a codefendant's inculpatory statements violated the right of the accused to be confronted by the witnesses against him, we find that the defendant was not prejudiced by this violation. Therefore, we affirm the judgment denying relief.

Roy Clark, Jr. was, in 1975, together with a codefendant, Brent Mikell, convicted in Louisiana state court of first degree murder, committed in the course of an arm-

ed robbery of a Holiday Inn, and sentenced to death by electrocution. The conviction was affirmed on appeal,[1] but the sentence imposed was vacated and the case was remanded for resentencing to a period of life imprisonment without eligibility for parole, probation, or suspension of sentence for twenty years because the Supreme Court had declared Louisiana's mandatory death sentence statute unconstitutional.[2] Clark later filed a petition for habeas corpus in state court, and this was denied after an evidentiary hearing. Having exhausted state remedies, he sought habeas relief in federal court. The district court denied relief.

The victim, Clyde Sawyer, was a night bookkeeper at the Holiday Inn in Slidell, Louisiana. Held up by three men at about 11:30 p.m., on February 1, 1975, he drew a pistol and exchanged shots with the robbers, wounding one. Sawyer was himself wounded and later died as a result. At 11:50 p.m. a Charity Hospital ambulance was flagged down by Clark and another man near a ramp to the interstate highway in New Orleans, about twenty miles from the place of the robbery. Clark told the ambulance occupants that he and his companion had a man with a gunshot wound in the back seat of their car. This was Brent Mikell, who had a bullet wound in the jaw.

The ambulance took Mikell to the hospital. Five hours later police questioned Mikell there and he gave a statement inculpating himself and two companions. Two

days later he gave a second inculpatory statement.[3] Mikell also told a deputy sheriff, three months after the robbery attempt, "I walked in, told him [Sawyer] this was a hold-up and he grabbed a gun and started shooting."[4] The state charged Mikell, Clark, and a third defendant, Carl Benion, with first degree murder.

There was evidence that about 8:00 p.m. on the day of the robbery, Clark had borrowed a 1971 Cadillac from Anthony Brown. There was evidence, apart from Mikell's statements, that Mikell had two companions and that one of them wore an orange wool ski hat and plaited hair. The ambulance driver who was stopped by Clark testified that Clark wore a hat of the same description, from which plaited hair protruded. The key issue at the trial, so far as Clark was concerned, was the identity of Mikell's companions. The jury found Clark and Mikell guilty but acquitted Benion. Clark contends that:[5] (1) the trial court erroneously failed to charge the jury that negligent homicide and manslaughter were lesser included offenses and that it might return a verdict of guilty to either of these offenses; (2) he was denied his sixth amendment right to confront the witnesses against him by the introduction of Mikell's statements; (3) the evidence was insufficient to prove first degree murder under Louisiana law because there was no evidence that Clark had the requisite intent to kill. We discuss these in reverse order.[6]

---

1. *State v. Clark,* 340 So.2d 208 (La.1976), *cert. denied,* 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977).

2. *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). The Louisiana Supreme Court had held that, in consequence, the appropriate sentence was life imprisonment. *State v. Jenkins,* 340 So.2d 157, 178–79 (La. 1976).

3. Both were found to have been given voluntarily and after adequate *Miranda* warning. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. On other occasions Mikell had offered two other conflicting versions of events. He told his common-law wife that he had asked where the restroom was and that the night bookkeeper

"pulled out a gun and fired at him." He told the two police officers who interviewed him shortly after the shooting that he had asked where the phone was, and the night bookkeeper had started shooting.

5. Clark also argues that the trial court gave a specific intent instruction of the kind found erroneous in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

6. The state contends that Clark is barred from challenging the jury charge and raising the alleged *Sandstrom* violation, *see supra* note 4, because he failed to make contemporaneous objections to these instructions at trial. Under Louisiana law, trial errors are reviewable only if they are objected to at the time of their occurrence. La.Code Crim.Proc. art. 841 (West

## I.

■ After telling the jury that Louisiana law recognizes four grades of homicide, the trial judge instructed the jury, "We are not dealing with negligent homicide here at all." He later added, "Now the one you immediately can discount is negligent homicide. That is the car wreck case where somebody gets killed driving in a car wreck, the drunk. You are not concerned with negligent homicide." Louisiana defines negligent homicide as "the killing of a human being by criminal negligence." [7]

A Louisiana statute requires that, "[w]hen there are several grades of an offense contained in a single count, the court shall charge the jury as to each grade of which the defendant could be found guilty." [8] Clark contends that this required the trial judge to instruct the jury that negligent homicide was a lesser included offense to a charge of first degree murder, and that a verdict of guilty of negligent homicide would be responsive to the charge. Louisiana law, however, recognizes only four responsive verdicts to a charge of first degree murder: guilty, guilty of second degree murder, guilty of manslaughter, and not guilty. [9] The judge's remarks were therefore an accurate statement of the law.

■ Clark also asserts that the charge on the responsive verdict of manslaughter was inadequate, and that the trial judge actually instructed the jury to disregard the verdict of manslaughter. The record shows, however, that the judge adequately instructed the jury as to the elements of manslaughter not once but twice, and that he did not tell the jury that it could disregard that verdict. Rather, in reiterating the definition of manslaughter, he attempted to simplify it by noting that the jury might disregard one specific provision—that defining manslaughter as a "homicide committed, without any intent to cause death or great bodily harm ... (w)hen the offender is engaged in the perpetration of *any felony not enumerated in Articles 30 or 30.1.*" [10] This definition of manslaughter could properly be ignored because the felony charged in the indictment, attempted robbery, was in fact specifically enumerated in the cited sections. The judge clearly instructed the jury that it might return a verdict of manslaughter if it found that the homicide had been committed "in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection." This was a correct statement of the law. [11]

Because there was no error in the trial judge's charge under state law, there was *a fortiori* no error of the magnitude of a constitutional violation. [12]

## II.

At the time of the offense, Louisiana defined first degree murder as the killing of a human being "when the offender has a specific intent to kill or to inflict great bodily harm *and* is engaged in the perpetration or attempted perpetration of ...

---

Supp.1984). The state, however, did not argue that these claims were procedurally barred during Clark's state habeas proceedings, and the state habeas court reached the merits of these claims. The state itself has thus removed any procedural bar to our consideration of these issues. *County Court v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979); *Gray v. Lucas,* 710 F.2d 1048, 1052 n. 2 (5th Cir.1983); *Moran v. Estelle,* 607 F.2d 1140, 1141–42 (5th Cir.1979).

7. La.Rev.Stat.Ann. § 14:32 (West 1974).

8. La.Code Crim.Proc. art. 804 (West 1981).

9. La.Code Crim.Proc. art. 814 (West 1981).

10. La.Rev.Stat.Ann. § 14:31(2)(a) (West 1974) (emphasis added).

11. *See id.* § 14:31(1).

12. Clark raised no objection to the charge at trial. "Before a federal court may grant relief under 28 U.S.C. § 2254 based on alleged error in a state trial court's unobjected to charge, the error must be so egregious as to rise to the level of a constitutional violation or so prejudicial as to render the trial itself fundamentally unfair." *Gray v. Lucas,* 710 F.2d 1048, 1056 (5th Cir. 1983) (quoting *Bryan v. Wainwright,* 588 F.2d 1108, 1110–11 (5th Cir.1979)).

armed robbery."[13] There was ample evidence that Clark engaged with Mikell in committing armed robbery. The state in its brief suggests no evidence, and we find none in the seven volume state trial record, that Clark had the specific intent to kill or to inflict bodily harm on Sawyer.

■ The state is required by the federal Constitution to prove the guilt of an accused beyond reasonable doubt, and its failure to do so constitutes a denial of due process. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We have previously considered the significance of the requirement that the state prove the specific intent its statute requires as a prerequisite to conviction of first degree murder. As we have explained, "a conspiracy alone to rob does not attach equal guilt and intent for all to a co-conspirator's act of murder." *Colin Clark v. Louisiana State Penitentiary*, 694 F.2d 75, 78 (5th Cir.1982). Before an accused may be convicted of that crime, there must be evidence sufficient to establish beyond reasonable doubt that he personally had "that mind to kill" or to harm grievously. *Id.* In *Colin Clark* the accused was sentenced to execution and we held that, on the record, he might have been sentenced to a lesser offense, second degree murder. Therefore, we granted a writ of habeas corpus, giving the state the option either to retry or to resentence Colin Clark.

■ But we do not grant a writ of habeas corpus in every instance in which the state has failed to conform to constitutional requirements. The denial of effective assistance of counsel is a violation of both the sixth amendment and of due process, but, to obtain a new trial, the accused must in most instances also prove that he suffered prejudice as a result.[14] Whether *Colin Clark* requires reversal in this case depends on whether Roy Clark suffered any prejudice as a result of the state's failure to prove that he had the requisite intent.[15] We turn to that question, noting that his sentence was to life imprisonment, without remission for at least twenty years.

■ Louisiana has a felony-murder statute. At the time of the offense, this defined as second degree murder killing a human being "[w]hen the offender is engaged in the perpetration or attempted perpetration of ... armed robbery, or simple robbery, even though he has no intent to kill."[16] That crime was punishable by imprisonment at hard labor for life, without remission for a period of twenty years.[17] Had the state court properly performed its function, it would have directed a verdict for Clark on the first degree murder charge and submitted to the jury only the second degree lesser-included offense.[18] There was no evidence that Clark

13. La.Rev.Stat.Ann. § 14:30(1) (West 1974). By Acts 1975, No. 327, § 1, the statute was amended, but the change became effective after the date of Sawyer's death, February 2, 1975.

14. *Strickland v. Washington*, —— U.S. ——, ——, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984) ("Conflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice.").

15. *Cf. Baldwin v. Blackburn*, 653 F.2d 942, 951–52 (5th Cir.1981), *cert. denied*, 456 U.S. 950, 102 S.Ct. 2021, 72 L.Ed.2d 475 (1982) (trial judge's failure to instruct jury that one of statutory aggravating circumstances must be found to convict defendant of first degree murder resulted in no prejudice because jury found one of such aggravating circumstances at sentencing phase); *Holloway v. McElroy*, 632 F.2d 605, 617–18 (5th Cir.1980), *cert. denied*, 451 U.S. 1028,

101 S.Ct. 3019, 69 L.Ed.2d 398 (1981) (even if trial judge's instructions shifted burden of negating malice to defendant, error was harmless beyond a reasonable doubt because jury, in convicting defendant of manslaughter, impliedly acquitted him of malice murder).

16. La.Rev.Stat.Ann. § 14:30.1 (West 1974).

17. *Id.*

18. The lawyers for Clark's codefendants moved for directed verdicts at the close of the state's case, but Clark's lawyers said nothing. We will assume, however, that the motions for directed verdicts were also made on Clark's behalf. Early in the trial it had been stipulated that an objection on behalf of any one defendant would serve for the other two as well. In addition, the judge denied the motions for directed verdict in all-inclusive terms, perhaps before Clark's lawyers had an opportunity to make a motion of

actually shot Sawyer, but there was strong evidence that Clark participated in the robbery attempt and provided the means of escaping from the scene. This was sufficient for the jury to have found him to be a principal in the attempted robbery and thus guilty of second degree murder for any killing that resulted from the attempt.[19] The sentence for that offense would have been the same as the one imposed on him. Because Clark has failed to show that he suffered any prejudice, we find no basis for granting a writ on the basis of insufficiency of the evidence.[20]

### III.

Brent Mikell did not testify at the trial. Four witnesses, however, all of them police officers, testified regarding inculpatory statements made to them by Mikell shortly after the attempted robbery. The court instructed the witnesses to omit any names mentioned by Mikell, so the statements as admitted did not name Clark or Benion. Two witnesses testified only that Mikell mentioned the names of two persons who had accompanied him.[21] Two other witnesses, both employed by the New Orleans Police Department, questioned Mikell on February 3, after placing him under arrest. They testified that Mikell told them that the idea of robbing the Holiday Inn had been formulated by "all three of us," and that "we all three had guns."

■ The confession of a nontestifying codefendant is admissible only against him-

self and only if it does not implicate his codefendants. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).[22] The rationale of *Bruton* is that the use of statements by a nontestifying codefendant against a defendant violates the defendant's sixth amendment right to confront the witnesses against him. Even though the jury is instructed to limit its consideration of the statement to the codefendant who confessed, there is a risk that the jury will be unable to ignore inculpatory references to the nonconfessing defendant. This risk is "so great, and the consequences of failure so vital to the defendant," that such statements are inadmissible. *Id.* at 135, 88 S.Ct. at 1627, 20 L.Ed.2d at 485.

In the years since *Bruton* was decided, lower courts have interpreted it to allow the introduction of "redacted" confessions that refer to other participants but do not inculpate any codefendants by name. *See, e.g., English v. United States*, 620 F.2d 150, 153 (7th Cir.), *cert. denied*, 449 U.S. 859, 101 S.Ct. 160, 66 L.Ed.2d 75 (1980); *United States v. Dady*, 536 F.2d 675 (6th Cir.1976). The redaction technique must, however, be employed cautiously and carefully to avoid violating the spirit, if not the letter, of *Bruton*. The *Bruton* opinion itself implied that redaction might be inadequate to allay the sixth amendment concerns that prompted the decision. 391 U.S. at 134 n. 10, 88 S.Ct. at 1626 n. 10, 20 L.Ed.2d at 484 n. 10; *see also* 21 C. Wright

their own ("All of the motions for mistrial and motion for directed verdict are denied").

**19.** *See State v. Johnson*, 365 So.2d 1267, 1272 (La.1978).

**20.** This conclusion makes it unnecessary for us to consider the argument that the state court's instructions to the jury concerning specific intent were erroneous and violated *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), by permitting the jury to infer specific intent from the results of the conduct of the accused.

**21.** The testimony by one police officer who interviewed Mikell on the night of the robbery was as follows:

Q. Did he say how many people were with him?
A. He never said a number, how many people. He said two names and asked if they were caught yet.
Q. So he did say two?
A. Yes, sir. He indicated two other people.

A second witness to this confession testified, "We asked him did he go to the Holiday Inn.... He responded 'Yes, with—' and identified the names of the two other individuals."

**22.** *Bruton* was held applicable to state courts in *Roberts v. Russell*, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).

& K. Graham, Federal Practice and Procedure § 5064, at 321–22 (1977).

We have held that a codefendant's statement that the proceeds of a crime were divided among a specific number of people does not violate *Bruton*. *United States v. Hicks*, 524 F.2d 1001, 1003 (5th Cir.1975), *cert. denied*, 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353 (1976).[23] Relying on *English*, we noted in *Hicks*, that "[t]he reference to the number of persons involved in [a crime] presents little prejudice. The key fact to be proved is not that the robbery took place, or that it involved several participants, but that the defendants were the robbers." 524 F.2d at 1003. Had Mikell merely stated that he was accompanied by two others, therefore, no serious *Bruton* question would have been presented, particularly in the light of other testimony that three persons were involved in the robbery.

■ Mikell's statements went beyond this, however. Two police officers testified that Mikell had given them specific names as those of his accomplices. The Second Circuit has held such testimony to violate *Bruton*, on the theory that a jury might "readily infer" that the deleted name was that of the codefendant. *United States v. Danzey*, 594 F.2d 905, 917–19 (2d Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979).[24] *English*, the case we relied on in *Hicks*, specifically distinguished the *Danzey* situation, remarking that *"Danzey* concerns the inferences which may be drawn when, although names have been excised from the redacted confession, it is explicitly stated that particular names were named. *Danzey* is not relevant here." 620 F.2d at 153 n. 6. Therefore, *Hicks* cannot be read to approve the admission of testimony that a nontestifying codefendant gave the names of his accomplices to the police. As the Second Circuit observed in *Danzey*, it would have been a simple matter to avoid mention of the fact that Mikell had named his cohorts.

But the evidence admitted went even further; there was additional testimony that Mikell had said that his two companions had guns and helped plan the robbery. This evidence, not duplicated by testimony from witnesses subject to cross-examination, directly implicated Mikell's companions in the crime. Although no names were mentioned, the jury might well have filled in the blanks from the prior testimony that Mikell had provided the police with two names, deducing that those names were those of Mikell's codefendants. Even if we assume the jury did not draw this inference of its own accord, the prosecutor, in his closing argument, supplied the names that the trial judge ordered omitted: "So consequently if Clark was with Mikell and Benion was with Clark, then they were all together. And if all three planned it, *as Mikell said they did*, then under the law of principals, all three of them are guilty of the crime ... of first degree murder ...."

Part of this was proper argument: it was fair to contend that the evidence proved Clark to have been on the scene and to urge that if, as the evidence also indicated, Benion was in Clark's company that night, both were engaged in the crime. The impropriety, still not perceived by the state's assistant district attorney when the case was argued to us, was to say that Mikell had said that "all three planned it."

This conduct was not per se a violation of the confrontation clause, for the prosecution was not a witness against the accused. It was, however, grossly improper, for it constituted an effort by the prosecutor to supply information to the jury that was not

**23.** *See also Slawek v. United States*, 413 F.2d 957, 960–64 (8th Cir.1969) (statement by nontestifying codefendant that he and three others had committed the crime held admissible).

**24.** *Accord, United States v. Brown*, 699 F.2d 585, 591–92 (2d Cir.1983) (testimony that codefendant told FBI agent names of accomplices violates *Bruton* ). *Cf. United States v. Burke*, 700 F.2d 70, 84–85 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983) (*Danzey* does not apply when jury is unaware that specific names were redacted from confession and could not "infer with confidence" that codefendant had identified particular individuals to FBI agent).

only not in the record but had been ruled inadmissible.[25]

In *United States v. Stewart*, 579 F.2d 356, 359 (5th Cir.), *cert. denied*, 439 U.S. 936, 99 S.Ct. 332, 58 L.Ed.2d 332 (1978), we held that "a statement made by one defendant, not inculpatory of a codefendant on its face, is admissible in a joint trial even though other evidence in the case indicates that a codefendant not mentioned in the statement was also involved in the activities described." Other circuits have adopted a similar rule.[26] But *Stewart* is distinguishable from this case. The testimony offered in *Stewart* was relatively innocuous.[27] A limiting instruction was timely requested and issued.[28] More importantly, there was no evidence that the nontestifying codefendant had provided the police with the name of his accomplice, and there was no improper prosecutorial argument to "fill in the blanks" for the jury. We find that, under this set of circumstances, Clark was denied his sixth amendment right to confront the witnesses against him.

The question remains whether this violation of *Bruton* requires reversal. Clark made no objection at trial to the admission of either of Mikell's statements or to the prosecutor's remarks at closing argument. This failure to object does not interpose a procedural bar to our consideration of his claim of the kind delineated in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), because the state courts have not interposed that bar themselves.[29] Nevertheless, concerns of comity are present whenever a federal court reviews the judgment of a state court. Had this case originated in the federal courts, we would reverse only if the trial court's failure to exclude this testimony and argument, sua sponte, rose to the level of plain error. *See* Fed.R.Crim.P. 52(b). We should accord the state trial court no less deference.[30]

In *United States v. Morales*, 477 F.2d 1309 (5th Cir.1973), we found that the admission of an unredacted statement by a nontestifying codefendant violated *Bruton*

**25.** Cf. *United States v. Sacco*, 563 F.2d 552, 555 (2d Cir.1977), *cert. denied*, 434 U.S. 1039, 98 S.Ct. 779, 54 L.Ed.2d 789 (1978) (court assumes *Bruton* is applicable to remarks made by nontestifying codefendant in pro se argument to jury); *United States v. Dady*, 536 F.2d 675, 678 (6th Cir.1976) (prosecutor's limited reference to nontestifying codefendant's confession in closing argument was in no way prejudicial and did not go beyond witness's testimony).

**26.** See, e.g., *United States v. Knuckles*, 581 F.2d 305, 313 (2d Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978); *United States v. Hendrickson*, 542 F.2d 21 (6th Cir.1976); *United States v. Trudo*, 449 F.2d 649 (2d Cir.), *cert. denied*, 405 U.S. 926, 92 S.Ct. 975, 30 L.Ed.2d 799 (1972). But cf. *Hodges v. Rose*, 570 F.2d 643, 646–47 (6th Cir.), *cert. denied*, 436 U.S. 909, 98 S.Ct. 2244, 56 L.Ed.2d 408 (1978) (admission of redacted confession, using "blank" for name of accomplice, was violation of *Bruton* when statement clearly implicated accomplice in murder and other evidence admitted virtually compelled inference that "blank" was codefendant).

**27.** The appellant, Scott, claimed that his sixth amendment rights were violated by the admission of a statement by his nontestifying codefendant, Stewart. Stewart's female traveling companion had testified as follows:

Q. (By Mr. Baker for the government) Brenda, listen to my question now. As you drove by this Hamilton Bank on the Chatsworth Highway in Dalton, what, if anything did Ronnie say about himself and that bank?

A. He said that that was the bank that him and some of his buddies hit.

579 F.2d at 359. Scott argued that this statement implicated him because "other clearly admissible testimony identified him as being involved in the event described in the statement." *Id.*

**28.** 579 F.2d at 359.

**29.** *See supra* note 6.

**30.** Cf. *supra* note 12 (standard for granting habeas relief on basis of jury charge not objected to at state trial). It is well established that *Bruton* violations are subject to the harmless error rule. *See Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *United States v. Bobo*, 586 F.2d 355, 367 n. 15 (5th Cir.1978), *cert. denied sub nom. Rowan v. United States*, 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1979); *Burkhart v. Lane*, 574 F.2d 346 (6th Cir.1978), *appeal after remand*, 591 F.2d 333 (6th Cir. 1979).

and constituted plain error. We were careful, however, to limit that holding to the facts of the case:

> Since the existence of plain error depends on the facts of the particular case, our holding that introduction of Gonzales' confession constituted plain error in no way creates a hard and fast rule. In another case, where the evidence of guilt is stronger or the incriminatory implication of the confession weaker, introduction of such a statement might not undermine the fairness of the trial.

*Id.* at 1316 n. 19. In *Morales,* the extra-judicial statements constituted "a significant portion of the evidence of guilt," and were "supplemented only by the doubtful testimony of an accomplice." *Id.* at 1315.

Here, in contrast, none of the information supplied by Mikell's statements, even taken in conjunction with the prosecutor's improper argument, was crucial to the state's case. One witness saw three men running from the Holiday Inn seconds after shots were fired. One of these men fit Clark's description (wearing an orange ski cap). This placed Clark at the scene of the crime, independently of Mikell's first statement. Although no witnesses duplicated Mikell's second statement that "all three" had planned the robbery and "all three" carried guns, establishing these facts was crucial only to a conviction for first degree murder. Under Louisiana's felony-murder doctrine, Clark might have been convicted of second-degree murder simply because he drove the escape vehicle,[31] and there is evidence, offered by witnesses subject to cross-examination, that he did so.[32] As we have noted, the sentence that Clark ultimately received was identical to that for second-degree murder; thus, he has failed to show that he suffered any prejudice from the admission of this second statement.

Moreover, although Mikell's statements referred to two companions, the third co-de-

---

31. *See supra* note 19.

32. As we have noted, there is evidence that Clark borrowed the escape vehicle on the evening of the robbery. In addition, the ambulance drivers flagged down by Clark testified that Mikell was in the back seat and that a third

fendant, Benion, was acquitted. The evidence against Clark, apart from that contained in Mikell's statements, was significantly stronger than the evidence against Benion. Benion's acquittal indicates that the jury placed considerable importance on evidence other than Mikell's statements. Thus, the admission of the evidence did not constitute plain error and therefore does not warrant reversal.

### IV.

We find no merit in Clark's challenges to the trial judge's jury charge. Although Clark should not have been convicted of first degree murder in the absence of any evidence of specific intent to kill, this error did not prejudice him because his sentence was reduced to the penalty he would have suffered without proof of specific intent. Clark's sixth amendment rights were violated by the admission of testimony and argument regarding Mikell's extrajudicial confessions, but this violation of *Bruton* does not rise to the level of plain error. Accordingly, we AFFIRM.

man, whom they could not describe, was in the front seat on the passenger side. Clark was standing outside the door of the front seat on the driver's side. This was strong evidence that he was in fact the driver.