**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 08-1714

———————

KYLE RAINEY,

Appellant

v.

BENJAMIN VARNER, Superintendent;
THE DISTRICT ATTORNEY OF THE COUNTY OF
PHILADELPHIA; and
THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA,


———————


On Appeal from the District Court
for the Eastern District of Pennsylvania
(No. 01-cv-623)
District Judge:  Honorable Timothy J. Savage


-1-

George A. Bibikos, Esq. **[ARGUED]**
David R. Fine
K&L Gates LLP
Market Square Plaza
17 North Second Street, 18th Floor
Harrisburg, PA 17101

*Attorneys for Appellant*

Anne Palmer, Esq.**[ARGUED]**
Thomas W. Dolgenos, Esq.
Ronald Eisenberg, Esq.
Arnold H. Gordon, Esq.
Lynne Abraham, Esq.
District Attorney's Office
Philadelphia County
3 South Penn Square
Philadelphia, PA 19107

[*] Honorable Yvette Kane, Chief United States District Court Judge for the Middle District of Pennsylvania, sitting by designation.

*Attorneys for Appellees*

---

OPINION OF THE COURT

---

FUENTES, *Circuit Judge*:

In 1994, Kyle Rainey, Nathan Riley, and two co-conspirators robbed a jewelry store in Philadelphia. During the robbery, Riley shot and killed the store owner. Following a seven-day trial, the jury found Rainey guilty of first degree murder, two counts of robbery, and other related charges. After the jury deadlocked on whether to impose the death penalty for first degree murder, the sentencing court imposed a mandatory term of life in prison. Rainey seeks habeas relief contending that his trial and appellate counsel were ineffective for failing to challenge his first degree murder conviction on the ground that the evidence was insufficient to prove his shared intent to kill.

Because the evidence at trial was sufficient to prove second degree murder and because a conviction for second degree murder in Pennsylvania results in a mandatory life sentence, the same sentence that Rainey is now serving, we discern no prejudice under *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Accordingly, we will affirm the District Court's denial of habeas relief.

**I.**

Rainey is currently incarcerated at a state correctional

-3-

facility in Dallas, Pennsylvania. On June 1, 1994, Rainey robbed Sun Jewelers with three co-conspirators: Nathan Riley, Maurice Everett, and Darrell Wallace. Rainey, Riley, and Everett approached the store together; Rainey remained outside while Riley and Everett entered the store through the front door, which was held open with a string. Bystander Al-Asim Abdul-Karim was watching from across the street; the three men caught his attention because of their "hurried" manner and because Riley was wearing a long-sleeved jacket and gloves on a warm day. According to the testimony of Mahlee Kang, one of the proprietors of the jewelry store, after Riley and Everett entered the store, Riley shouted "don't move" and pointed a .38 caliber semi-automatic handgun at her. A few seconds later, Riley aimed the gun at her husband, Sun Kang, and shot him in the neck, killing him.

At some point after Riley and Everett entered the store, Rainey lifted the string and closed the door, causing it to lock automatically. It is contested, however, whether Rainey closed the door before or after Riley shot Sun Kang. Abdul-Karim testified that "*as the door was closing*, I could hear somebody say 'don't move,' and an individual . . . had his hand up in the air with what appeared to be a pistol. And following that, I heard a discharge of a weapon." (*Id.* at 12) (emphasis added). On direct examination, Mahlee Kang testified that "my husband was lying on the floor . . . but the man took the string out and he was closing the door." (*Id.* at 106; *see also id.* at 146–47.) On cross examination, however, defense counsel showed Mahlee Kang a statement that she made to a detective shortly after the robbery in which she said that Rainey "lifted the string and let the door close, but he didn't come in the store. I don't know

-4-

where he went after the door shut because that was when the boy with the gun shot my husband." (*Id*. at 147.)

Riley continued pointing the gun at Mahlee Kang while Everett grabbed jewelry and put it in a bag. They left the store and got into a blue car that was double-parked outside. Wallace was the driver, and Rainey was in the back seat directly behind Wallace. Abdul-Karim testified that he heard Rainey say "let's go" to Riley and Everett before they jumped into the car. (*Id*. at 16–17.) Wallace then drove away.

In a search of the jewelry store after the robbery, police officers recovered a pair of handcuffs and a fired cartridge case of a Federal brand "wad-cutter" type bullet. Bullet casings of the same type and brand were found in Rainey's bedroom during a subsequent search. The search of Rainey's home also turned up a gold metal foil price tag matching those from the jewelry store. At trial, the Commonwealth presented testimony from an employee of an adult bookstore who recalled that shortly before the date of the robbery, he sold Rainey handcuffs similar to those found in the jewelry store.

In June 1994, Riley turned himself in to the police and gave a statement to Detective Albert Maahs. In the statement, he confessed to killing Sun Kang during the robbery and inculpated Wallace and Everett. Riley did not mention Rainey in his written statement, instead asserting that Wallace stood outside the jewelry store door and acted as the getaway driver. Specifically, Riley's statement recounted that Wallace and Everett pulled up in Wallace's car and that Wallace told Riley to get into the car. Wallace then handed Riley a gun and informed him that they were going to rob a jewelry store.

Wallace parked the car, and all three walked to the jewelry store where Wallace instructed Riley and Everett to go inside and closed the door behind them. Once inside the store, Everett told Riley to shoot Sun Kang, and Everett collected jewelry. When Riley and Everett saw Wallace's car pull up outside, they exited the store and got into the car; Wallace then drove away. Riley's statement also identified Wallace as the mastermind of the robbery.

After additional investigation, the police obtained a search warrant for Rainey's home and an arrest warrant for Rainey. Rainey fled from the police on more than one occasion before they managed to arrest him. Following his arrest, Rainey was charged with, among other things, first degree murder. Before trial, Rainey's counsel filed a motion to suppress and a motion to sever his trial from that of his co-defendants. The Court of Common Pleas denied both motions, and Rainey was tried with Riley and Wallace.

At trial, Detective Maahs was called to testify regarding Riley's statement. Maahs testified that the written statement was taken in the presence of Riley's child advocate, Matthew Blum. Maahs also recounted the contents of Riley's written statement, which had been redacted to avoid incriminating Riley's codefendants.

Riley testified in his own defense. His testimony at trial contradicted portions of his written statement as well as other prior statements that he made to Maahs. In particular, Riley testified that he was forced to commit the robbery by Everett. On the witness stand, Riley explained that he owed money to Everett, who threatened to hurt him unless he participated in the

-6-

robbery. In his earlier conversation with Maahs, Riley stated that he had been threatened by Wallace, not by Everett. When asked about this inconsistency at trial, Riley responded that he had initially placed the blame on Wallace because he had been afraid of Everett. Riley also testified that Rainey was not involved in the robbery and that he had not mentioned Rainey's name to Maahs.

To impeach Riley, Wallace's counsel recalled Maahs. Maahs testified that after Riley finished giving his written statement and some time elapsed, Maahs spoke with him a second time. Riley's mother was present during this conversation. According to Maahs, Riley acknowledged that a fourth person—Rainey—had been involved in the robbery. Maahs recalled that Riley said that he was afraid of Rainey. During this conversation, Riley clarified that some of the actions that he had attributed to Wallace in his statement were actually done by Rainey, who "ran the show." (J.A. at 61.) In particular, Riley said that Rainey planned the robbery, recruited Riley to participate, handed Riley the gun, gave Everett the handcuffs, closed the door of the store behind Riley and Everett, sold the jewelry after the robbery, and divided the proceeds. Moreover, Riley stated that he had accompanied Rainey to purchase the handcuffs used in the robbery and identified the store where they made the purchase. According to Maahs's testimony, Riley stated that Rainey had threatened him and that he would not put anything about Rainey in writing.

On May 22, 1995, after a seven-day trial, the jury found Rainey guilty of first degree murder, two counts of robbery, aggravated assault, recklessly endangering another person, conspiracy to commit robbery and/or murder, possessing an

instrument of crime, and carrying a firearm in public. Pursuant to the jury charge and the verdict slip, the jury, having found Rainey guilty of first degree murder, did not enter a verdict with respect to second or third degree murder. At the sentencing stage, the jury deadlocked on whether to impose the death penalty for the first degree murder conviction. On May 24, 1995, the trial court imposed the mandatory term of life imprisonment for the murder conviction and deferred sentencing on the remaining convictions. Rainey's counsel filed a motion for a new trial based on the denial of the motion to sever, which was denied. Thereafter, the court formally imposed a life sentence for the first degree murder conviction and a consecutive term of six to twelve years for the remaining convictions.

Represented by new counsel, Rainey appealed to the Pennsylvania Superior Court. Appellate counsel raised six claims but did not argue that trial counsel was ineffective or that the evidence of Rainey's shared intent to kill was insufficient to sustain his conviction for first degree murder.[1] The Superior

---

[1] In ruling on one of Rainey's claims—that the trial court erred in allowing Maahs to testify as to Riley's statement implicating Rainey—the Superior Court evaluated the totality of the evidence presented at trial. It held that "[t]he uncontradicted evidence of guilt at trial was so overwhelming and the prejudicial effect, if any, of [Maahs's] testimony was so insignificant by comparison, that it is clear beyond a reasonable doubt that the error did not contribute to the verdict." (J.A. at 340.) The Superior Court, however, was not presented with and did not rule on the specific argument that the evidence of

Court rejected all of Rainey's claims and affirmed the judgment of sentence. The Pennsylvania Supreme Court denied allowance of appeal.

In October 1998, Rainey filed a pro se petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541–9546. The state court appointed counsel to represent Rainey in the PCRA proceedings. Counsel, however, filed a letter pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988) (*en banc*), claiming that Rainey's PCRA petition raised no meritorious claims (a "*Finley* letter*"). Counsel was permitted to withdraw, and Rainey proceeded pro se. Rainey argued that his trial and appellate counsel were ineffective for failing to challenge his first degree murder conviction on the ground that the evidence was insufficient to prove his shared intent to kill (the "layered ineffectiveness claim").[2] The PCRA court concluded that Rainey's claims lacked merit and dismissed his petition. Rainey appealed pro se to the Superior Court, which affirmed the denial of relief. The Superior Court held that Rainey's layered ineffectiveness claim lacked merit and that his other claims had been waived.

---

Rainey's shared intent to kill was insufficient.

[2] In presenting this argument, Rainey used the term "weight of the evidence" rather than "sufficiency of the evidence." As we discuss more thoroughly below, given that Rainey's pro se petition must be construed liberally, Rainey merely mislabeled his claim and fairly presented the sufficiency issue to the state courts.

Rainey timely filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the Eastern District of Pennsylvania. Rainey advanced six claims for relief, including the layered ineffectiveness claim. The case was referred to a Magistrate Judge, who issued a Report and Recommendation concluding that Rainey was entitled to habeas relief based on his layered ineffectiveness claim. Specifically, the Magistrate Judge concluded that (1) the evidence at trial was insufficient to establish a shared intent to kill, (2) Rainey's trial and appellate counsel rendered deficient performance in failing to raise the sufficiency claim, and (3) this deficient performance prejudiced Rainey. With respect to prejudice, the Magistrate Judge reasoned as follows:

> In light of the lack of evidence of specific intent in the instant case, [I] believe that there is a reasonable possibility that the trial court would have granted a new trial if counsel had argued that the verdict of first degree murder was against the weight of the evidence. As a result, [I] find that Rainey[] was prejudiced by trial counsel's deficient performance. . . . Moreover, [I] believe that if direct appellate counsel had raised and fully briefed the [sufficiency of the evidence issue], then there is a reasonable possibility that the result of Rainey's appeal would have been different.

(J.A. at 31–33.) The Magistrate Judge recommended that Rainey's other claims be dismissed as procedurally defaulted.

The District Court appointed counsel to represent Rainey and held oral argument. By Memorandum and Order dated February 21, 2008, the District Court approved and adopted the Report and Recommendation in part, rejected it in part, denied the petition, and declined to issue a certificate of appealability. Specifically, the District Court held that Rainey had properly

-10-

exhausted his layered ineffectiveness claim, that there was insufficient evidence of Rainey's shared intent to kill, and that his counsel rendered deficient performance in failing to challenge the sufficiency of the evidence at trial or on direct appeal. With respect to prejudice, however, the District Court concluded that:

> [Rainey] suffered no prejudice. . . . Although the evidence may not have been sufficient to sustain a first degree murder verdict, it was sufficient for a second degree felony murder conviction. . . . He was sentenced to life on the first degree murder conviction, the same sentence he would have received had he been convicted of second degree murder.

(J.A. at 52–53.) Accordingly, the District Court held that Rainey was not entitled to habeas relief on the ground of ineffective assistance of counsel. The District Court adopted the recommendation that Rainey's other claims be dismissed as procedurally defaulted and denied the habeas petition.

Rainey timely filed a Notice of Appeal. On April 17, 2008, he filed a pro se motion for a certificate of appealability. We granted the certificate only as to the "layered ineffectiveness of counsel claim." (*Id.* at 55.) We permitted Rainey's counsel to withdraw and appointed present pro bono counsel.

## II.

The District Court exercised jurisdiction over Rainey's petition for a writ of habeas corpus under 28 U.S.C. §§ 2241 and 2254. We have jurisdiction to review the District Court's denial of the writ pursuant to 28 U.S.C. §§ 1291 and 2253.

When reviewing a district court decision regarding a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, "[w]e apply the same standards as the District Court, as

-11-

mandated by the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA')." *Jacobs v. Horn*, 395 F.3d 92, 99 (3d Cir. 2005). Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Moreover, "[a] federal habeas court must presume that a state court's findings of fact are correct. The petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence." *Jacobs*, 395 F.3d at 99 (citing 28 U.S.C. § 2254(e)(1)).

Under § 2254(d)(1), a state court decision is contrary to Supreme Court precedent if the state court reached a "'conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Marshall v. Hendricks*, 307 F.3d 36, 51 (3d Cir. 2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). A state court decision is an unreasonable application of Supreme Court precedent if the court: (1) "identifies the correct governing legal rule from the Supreme

-12-

Court's cases but unreasonably applies it to the facts of the particular case"; (2) "unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not apply"; or (3) "unreasonably refuses to extend that principle to a new context where it should apply." *Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir. 2002) (citing *Williams*, 529 U.S. at 407). "The unreasonable application test is an objective one—a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." *Jacobs*, 395 F.3d at 100 (citations omitted).

Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Shelton v. Carroll*, 464 F.3d 423, 438 (3d Cir. 2006) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). For AEDPA purposes, the *Strickland* test qualifies as "clearly established Federal law, as determined by the Supreme Court." *Williams*, 529 U.S. at 391. Under *Strickland*, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. This review is deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .

-13-

*Id.* at 689.

Not every "error by counsel, even if professionally unreasonable, . . . warrant[s] setting aside the judgment of a criminal proceeding." *Id.* at 691. "Even if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they actually had an adverse effect on the defense"; in other words, the habeas petitioner must show that he was prejudiced by counsel's deficient performance. *Id.* at 693. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding . . . . In every case the court should be concerned with whether . . . the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696.

## III.

### A. Exhaustion of the Layered Ineffectiveness Claim

We first address the Commonwealth's argument that Rainey failed to exhaust his layered ineffectiveness claim, in which Rainey contends that his trial and appellate counsel were ineffective for failing to challenge the *sufficiency* of the evidence establishing a shared intent to kill. The Commonwealth asserts that before the state courts, Rainey contended that his counsel should have challenged the *weight* of the evidence but did not make a *sufficiency* argument. Following a review of Rainey's filings and the decisions of the PCRA courts, the District Court held that "the Pennsylvania court was presented with and did consider Rainey's

-14-

ineffectiveness claim as implicating the sufficiency of the evidence." (J.A. at 46.)

Pursuant to 28 U.S.C. § 2254(b)(1)(A), the federal courts may grant a state prisoner's habeas petition only if the petitioner "has exhausted the remedies available in the courts of the State." AEDPA's exhaustion requirement mandates that the claim "must have been 'fairly presented' to the state courts." *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Fair presentation "means that a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Id.* at 725 (internal quotation marks & citations omitted). In other words, the petitioner must afford the state system "the opportunity to resolve the federal constitutional issues before he goes to the federal court for habeas relief." *Zicarelli v. Gray*, 543 F.2d 466, 472 (3d Cir. 1976) (*en banc*) (internal quotation marks & citations omitted). Fair presentation by the petitioner to the state courts is sufficient; the claims "need not have been considered or discussed by those courts." *Swanger v. Zimmerman,* 750 F.2d 291, 295 (3d Cir. 1984) (citations omitted).

To assess whether a pro se petitioner fairly presented claims to the state courts, we will construe the pleadings liberally. *Cf. United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). A habeas corpus petition prepared by a prisoner without legal assistance may not be skillfully drawn and should thus be read generously. "It is the policy of the courts to give a liberal construction to pro se habeas petitions." *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) (citation omitted).

The Commonwealth correctly asserts that a challenge to the sufficiency of the evidence differs significantly from a challenge to the weight of the evidence. Under Pennsylvania

-15-

law, the "distinction between a determination of the weight of the evidence, which allows the trial court to make an independent assessment of the credibility of the prosecution's case, and a sufficiency determination, which confines the reviewing tribunal to accepting the evidence produced by the prosecution in the most favorable light, is well established." *Commonwealth v. Vogel*, 461 A.2d 604, 609 (Pa. 1983) (internal citations omitted).

In *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000), the Supreme Court of Pennsylvania clarified the differences between the two claims in some detail. The court described a sufficiency claim in the following terms:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Id.* (internal citations omitted). A weight claim, as the court explained, differs from a sufficiency claim:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to

-16-

sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. . . . [T]he role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Id.* at 751–52 (internal quotation marks, footnote, and citations omitted).

Given the significant differences between sufficiency and weight claims, in order for Rainey to have exhausted his sufficiency claim, he must have fairly presented that claim to the Pennsylvania courts. Presentation of a weight claim would not exhaust a sufficiency claim. Nevertheless, as Rainey was pro se, his filings are to be read liberally. In his initial pro se Motion for Post Conviction Collateral Relief, Rainey alleged that the "[w]eight of the [e]vidence was [c]ontrary to the [v]erdict." (Commonwealth Supplemental Appendix ("Commw. S.A.") at 148.) Yet, he explained further that "[t]he evidence failed to establish that a shared specific intent to kill existed," a statement that sounds in sufficiency of the evidence rather than weight. (*Id.*) In his *Finley* letter, counsel appointed to represent Rainey characterized Rainey's argument as a weight claim. In stating the standard of review, however, counsel wrote as follows:

In determining whether a verdict is against the weight of the evidence the court must view the evidence and all reasonable inferences from it in the light most favorable to the Commonwealth, as the verdict winner, and determine whether *sufficient* evidence was presented to prove each element of the crimes the defendant was

-17-

convicted of beyond a reasonable doubt.

(*Id.* at 154) (emphasis added) (citations omitted). This standard is the correct standard for a *sufficiency* claim, not for a *weight* claim.

The PCRA court titled the section of its opinion addressing this claim "Weight of the Evidence." (*Id.* at 160.) In analyzing the claim, the court noted that "[o]n direct appeal, the defendant did not raise the issue of the sufficiency or weight of the evidence." (*Id.*) It determined, however, that the Superior Court analyzed the evidence of guilt and concluded that it was overwhelming. (*Id.*) As a result, the PCRA court was "thereby satisfied that the Superior Court had in fact viewed the evidence and found it to be *sufficient* to support the verdict." (*Id.* at 161) (emphasis added). While this analysis is cursory, it considers Rainey's claim as one challenging the sufficiency of the evidence.

In his pro se brief appealing the decision of the PCRA court, Rainey cited the standard of review for weight claims. The discussion that followed, however, while using the term "weight," actually contended that the evidence was not sufficient to demonstrate that Rainey had a shared intent to kill. Rainey argued that "the verdict was against the weight of the evidence in that it was not shown [he] had a shared intent to kill with the actual shooter." (J.A. at 356.) He likewise contended that "[a]n overview of the record instantly reveals that the Commonwealth failed to establish beyond a reasonable doubt that a shared specific intent to kill existed." (*Id.* at 361.) Whether the Commonwealth has shown or established the existence of an element of a crime is an inquiry into the sufficiency of the evidence, not its weight. Furthermore, Rainey cited *Commonwealth v. Bachert*, 453 A.2d 931, 933 (Pa. 1982), a case that lays out the test for sufficiency of the evidence. Later in the argument, however, Rainey delineated the standard of review for weight claims. (J.A. at 361) ("[T]he evidence

-18-

need not be viewed in a light most favorable to the verdict winner, and [the court] may evaluate the credibility of witnesses by itself.").

For a claim to be exhausted, the critical requirement is fair presentation *by the petitioner*; the claim "need not have been considered or discussed by [the state] courts." *Swanger,* 750 F.2d at 295 (citations omitted). Accordingly, we base our conclusion regarding exhaustion on what Rainey presented in his filings, not on the way in which those filings were interpreted by the state courts. Given that pro se petitions are to be construed liberally, Rainey's filings, while internally inconsistent, can fairly be read as asserting a claim that his trial and appellate counsel were ineffective for failing to challenge the sufficiency of the evidence.[3] In sum, we affirm the District Court's conclusion that Rainey's PCRA filings fairly presented the claim that his trial and appellate counsel were ineffective for failing to litigate *sufficiency* of the evidence. Rainey thus exhausted this claim before the state courts, and it is appropriately before us on federal habeas review.

## B. Ineffective Assistance of Counsel

Having concluded that Rainey exhausted his layered ineffectiveness claim, we next address whether the state courts' denial of this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in

---

[3] The Commonwealth responds that Rainey must have been making a weight argument as he faulted both trial and appellate counsel and only weight claims must be raised at trial whereas sufficiency claims can be raised for the first time on appeal. This argument is unpersuasive as it presumes that a pro se litigant has an understanding of the intricacies of Pennsylvania criminal procedure.

-19-

the State court proceeding," *id.* § 2254(d)(2). As previously stated, a claim of ineffective assistance of counsel is assessed under the familiar two-prong *Strickland* test. With respect to the sequence of the two prongs, the *Strickland* Court held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697. We believe this to be the case here.

Accordingly, we turn first to the issue of whether Rainey was prejudiced by his trial and appellate counsel's failure to challenge the sufficiency of the evidence of his shared intent to kill. The District Court concluded that "where the defendant was not the killer and where the evidence of shared intent is lacking, counsel's failure to challenge a first degree murder conviction in a felony murder context is deficient." (J.A. at 51–52.) Nevertheless, the District Court held that Rainey failed to make out a claim for ineffective assistance of counsel under *Strickland* as "the petitioner suffered no prejudice." (*Id.* at 52.) The District Court explained its reasoning as follows:

> There was sufficient evidence to sustain a second degree murder sentence which carries the same sentence—life imprisonment. Had counsel clearly raised a sufficiency of the evidence objection, it is unlikely that the PCRA court and the Superior Court would have vacated the petitioner's first degree murder conviction and granted a new trial because the result was not fundamentally unfair. Thus, the prejudice prong is not met, and the state court's decision was not unreasonable.

(*Id.*) Accordingly, the District Court held that Rainey "was

-20-

sentenced to life on the first degree murder conviction, the same sentence he would have received had he been convicted of second degree murder. Thus, he suffered no prejudice as a consequence of any failure of counsel to raise the sufficiency issue . . . ." (*Id.* at 52–53) (citation omitted).

In *Clark v. Maggio*, 737 F.2d 471, 475 (5th Cir. 1984), the Fifth Circuit analyzed a fact pattern similar to that presented in the instant case. Under Louisiana law, if a murder occurs in the course of a robbery, it qualifies as first degree murder if the offender has a specific intent to kill or to inflict great bodily harm. *Id.* at 474–75. If such intent is lacking, the offense is instead second degree felony murder. *Id.* at 475. Reviewing the record, the court found no evidence that Clark possessed the intent required for first degree murder; thus, his conviction for that offense was unconstitutional. *Id.* Nevertheless, the court declined to grant Clark's habeas petition because there was no prejudice:

> Had the state court properly performed its function, it would have directed a verdict for Clark on the first degree murder charge and submitted to the jury only the second degree lesser-included offense [of felony murder]. There was no evidence that Clark actually shot Sawyer, but there was strong evidence that Clark participated in the robbery attempt and provided the means of escaping from the scene. This was sufficient for the jury to have found him to be a principal in the attempted robbery and thus guilty of second degree murder for any killing that resulted from the attempt. The sentence for that offense would have been the same as the one imposed on him. Because Clark has failed to show that he suffered any prejudice, we find no basis for granting a writ on the basis of

-21-

insufficiency of the evidence.

*Id.* at 475–76 (footnotes omitted). In other words, the *Clark* court held that no prejudice occurs if a petitioner was wrongfully convicted of an offense for which there was insufficient evidence but is serving the same sentence that he would have been serving had he been properly convicted of the offense for which there was sufficient evidence. *Id.* at 476; *accord Brown v. Collins*, 937 F.2d 175, 182–83 (5th Cir. 1991) ("Brown's sentence for his conviction of aggravated battery . . . would have been the same [as the sentence he is currently serving], and therefore, he cannot demonstrate any constitutional prejudice . . . .").

The *Clark* case is directly applicable to the instant appeal.[4] Rainey was convicted of first degree murder, for which he is serving a life sentence. The jury also convicted Rainey of robbery. Assuming that the evidence presented at trial was insufficient to establish a shared intent to kill, it was nonetheless sufficient to establish the elements of second degree felony murder. Rainey was convicted of robbery, and the evidence clearly established that a death occurred during that robbery, which is sufficient to prove second degree murder under Pennsylvania law. *See* 18 Pa. Cons. Stat. Ann. § 2502(b) ("A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony."). Under

---

[4] In *Clark*, which interpreted Louisiana law, the offense for which there was sufficient evidence—second degree felony murder—was a lesser included offense of the offense of conviction. Under Pennsylvania law, which governs the instant case, second degree felony murder is not a lesser included offense of first degree murder. This difference, however, is immaterial as the holding in *Clark* did not depend on the relationship between the two offenses but instead on a comparison between sentences.

-22-

Pennsylvania law, "[a] person who has been convicted of murder of the second degree shall be sentenced to a term of life imprisonment." 18 Pa. Cons. Stat. Ann. § 1102(b) (1995); *accord Castle v. Pennsylvania Bd. of Probation & Parole*, 554 A.2d 625, 627 (Pa. Commw. Ct. 1989) (holding that a conviction for second degree murder carries a *mandatory* life sentence under Pennsylvania law). Accordingly, had Rainey been retried and convicted of second degree murder, he would have received the same sentence.

According to Rainey, he was prejudiced because his trial and appellate counsel failed to challenge the sufficiency of the evidence establishing his shared intent to kill. Had trial or appellate counsel made such an argument and prevailed, Rainey would have been granted a new trial. At this new trial, double jeopardy would have prohibited Rainey from being tried for first degree murder but not for second or third degree murder. *See Burks v. United States*, 437 U.S. 1, 18 (1978); *Ball v. United States*, 163 U.S. 662, 669 (1896). Rainey has not identified any new argument or new evidence that he could have presented at a second trial such that he would not have been convicted of second degree murder.[5] Thus, we have no reason to speculate

---

[5] In arguing that he was prejudiced, Rainey relies heavily on *Everett v. Beard*, 290 F.3d 500 (3d Cir. 2000), *abrogated on other grounds as recognized in Priester v. Vaughn*, 382 F.3d 394 (3rd Cir. 2004). In *Everett*, as in the instant case, petitioner was convicted as an accomplice in a robbery, during which the other participants killed the proprietor of the store. *Id.* at 503. Everett was charged with and convicted of first degree murder and sentenced to life in prison. *Id.* At trial, "the state trial judge, in charging the jury, said over and over again that Everett could be found guilty of intentional [first degree] murder if his accomplice intended to cause the death of the victim." *Id.* Counsel failed to object to the jury charge, and Everett filed a habeas petition claiming ineffective assistance of trial counsel.

otherwise.

This analysis demonstrates that even had Rainey's counsel challenged the sufficiency of the evidence, Rainey would have received the same sentence that he is currently

The District Court denied Everett's petition. Everett appealed, and we reversed, concluding that counsel was ineffective for failing to object to the jury instructions. With respect to prejudice, we held that "but for the failure of counsel to object to the jury instructions, there is more than a reasonable probability that Everett would not have been convicted of first-degree murder because there was no evidence that he possessed the requisite specific intent to kill." *Id.* at 515–16.

Rainey contends that *Everett* controls the outcome of the instant appeal; we disagree. In *Everett*, in holding that the petitioner was prejudiced by his first-degree murder conviction, we did not address his sentence. Subsequent to our decision in *Everett*, the Supreme Court has reemphasized in a number of cases that prejudice under *Strickland* requires a showing of a reasonable probability of a different result, that is, a different sentence. *See, e.g.*, *Porter v. McCollum*, — U.S.—, 130 S. Ct. 447, 453 (2009) ("Porter must show that but for his counsel's deficiency, there is a reasonable probability he would have received a different sentence."); *Wong v. Belmontes*, — U.S.—, 130 S. Ct. 383, 386 (2009) ("[T]o establish prejudice, Belmontes must show a reasonable probability that the jury would have rejected a capital sentence . . . ."); *Wiggins v. Smith*, 539 U.S. 510, 536 (2003) ("We further find that had the jury been confronted with this considerable mitigating evidence, there is a reasonable probability that it would have returned with a different sentence."). In light of these Supreme Court cases, we are squarely addressing the issue of whether Rainey would have received the same sentence even if his counsel had challenged the sufficiency of the evidence. Thus, the instant case is clearly distinguishable from *Everett*.

serving—life imprisonment. To establish prejudice, Rainey "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Here, the result of the proceeding—a life sentence—would have been the same had counsel challenged the sufficiency of the evidence. Accordingly, Rainey cannot show that he was prejudiced and cannot prevail on his claim of ineffective assistance of counsel. The District Court correctly concluded that Rainey did not suffer prejudice from counsel's failure to challenge the sufficiency of the evidence, and we affirm.

With respect to Rainey's remaining claims, the District Court concluded that they were procedurally defaulted. Because Rainey's layered ineffectiveness claim, the sole claim before us, fails on the prejudice prong, Rainey is not entitled to habeas relief.[6]

## IV.

For the foregoing reasons, we will affirm the District Court's denial of Rainey's habeas petition.

---

[6] Because we decline to grant Rainey's habeas petition, we need not address his contention that, were we to grant the writ, double jeopardy would bar his retrial for first, second, and third degree murder, making immediate release the only appropriate remedy.

-25-