**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1908
_____

TONY L. BENNETT,
Appellant

v.

SUPERINTENDENT GRATERFORD SCI;
ATTORNEY GENERAL PENNSYLVANIA
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-13-cv-01203)
District Judge: Honorable James Knoll Gardner
_____

Argued: May 9, 2017
_____

Before: AMBRO, RESTREPO and NYGAARD,
<u>Circuit Judges</u>.

(Filed: March 26, 2018)
_____

Richard H. Frankel, Esq.
Ke Gang, Student Counsel [ARGUED]
Mischa Wheat, Student Counsel [ARGUED]
Appellate Litigation Clinic
Drexel University Kline School of Law
3320 Market Street
Philadelphia, PA 19104

    *Counsel for Appellant*

Christopher P. Lynett, Esq. [ARGUED]
Simran Dhillon, Esq.
Susan E. Affronti, Esq.
Philadelphia County Office of District Attorney
Three South Penn Square
Philadelphia, PA 19107-3499

    *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

RESTREPO, <u>Circuit Judge</u>.

In 1990, nineteen year old Tony Bennett was sitting in the passenger seat of a getaway car when his conspirator entered a jewelry store to commit a robbery, shooting the clerk and killing her. Bennett was convicted of first degree murder. After a capital sentencing hearing, the jury returned a sentence of life imprisonment without the possibility of parole. Two state courts later vacated Bennett's first degree

murder conviction, finding that the trial court erroneously instructed the jury that it could convict Bennett of first degree murder based on the shooter's intent to kill. Bennett never got relief; instead, the Pennsylvania Supreme Court reversed. Before us is Bennett's habeas corpus petition, asserting that the trial court's erroneous jury instructions deprived him of due process of law under the United States Constitution. Applying *de novo* review, we agree and will grant the writ.

## I. Factual and Procedural Background

### A. Trial and Sentencing

The Pennsylvania Supreme Court summarized the factual history of this case as follows:

> [Bennett] conspired with four individuals, Michael Mayo, Kecia Ray, Kevin Wyatt, and Paul Johnson, to rob a jewelry store in Philadelphia at gunpoint. The store was selected because a salesperson, Ms. Ju Yang Lee, had made what the conspirators believed to be an insultingly low offer for a gold chain that Mayo and Johnson earlier had sought to pawn. Appellee Bennett supplied the loaded gun, but did not enter the store, remaining in the getaway car with Wyatt. Mayo and Johnson were caught on videotape entering and robbing

3

> the store. During the robbery, Mayo shot Ms. Lee with [Bennett]'s gun, killing her.

*Commonwealth v. Bennett (Bennett VI)*, 57 A.3d 1185, 1187 (Pa. 2012).

Bennett proceeded to a jury trial on charges of murder, criminal conspiracy, possession of an instrument of crime, and robbery. The Commonwealth charged murder generally, and the trial court instructed the jury on first, second, and third degree murder, as well as voluntary manslaughter. The Commonwealth also charged conspiracy generally. The trial court instructed the jury that the objective of the conspiracy was murder, robbery, possession of an instrument of crime, and a firearms offense.

Bennett was tried jointly with two other non-shooters, Johnson and Wyatt. Johnson entered the jewelry store with the shooter. Wyatt, like Bennett, remained in the getaway car. *Id.* The fourth non-shooter, Ray, testified for the Commonwealth and later received a lenient sentence.[1] Mayo, the shooter, was initially on trial with Johnson and Wyatt, but during jury selection suffered "an acute psychotic episode" requiring hospitalization. App. 284. Mayo was declared incompetent after voir dire and his case severed.

Bennett was charged capitally.[2] Under Pennsylvania law, the Commonwealth could only obtain a death sentence if

---

[1] Ray was sentenced to fourteen to twenty-eight months' incarceration and ten years' probation.

[2] So too were co-defendants Johnson and Wyatt.

4

the jury convicted Bennett of first degree murder. *See* 18 Pa. Cons. Stat. § 1102(a)(1). Therefore, from the start of trial, a central issue was whether Bennett was guilty of this offense. *See Bennett VI*, 57 A.3d at 1204 n.12. First degree murder in Pennsylvania requires that each defendant have the specific intent to kill. 18 Pa. Cons. Stat. § 2502(a). An accomplice or conspirator cannot be convicted of first degree murder based on the specific intent to kill of the principal. *See Commonwealth v. Huffman*, 638 A.2d 961, 962 (Pa. 1994) (citing *Commonwealth v. Bachert*, 453 A.2d 931, 935 (Pa. 1982)).

At Bennett's trial, the Commonwealth never argued that Bennett had the specific intent to kill. Rather, its theory was that he was guilty of first degree murder solely because he was an accomplice and conspirator of the shooter. In the Commonwealth's opening statement, the prosecutor told the jury that "lest you think I am crazy for saying [Bennett, Johnson and Wyatt] are guilty of first degree murder, when I told you that Michael Mayo fired the fatal shots . . . I will urge upon you that the law of conspiracy makes all of these defendants first degree murderers." App. 312-13. In closing, the prosecutor argued that "accomplices are equally guilty with the principal. First degree murder, intent to kill. There is no doubt, there can be no doubt that [the shooter] Michael Mayo intended to kill [the victim]. . . . Co-conspirators and accomplices are equally guilty with the principal." App. 591-92.

This argument—that an accomplice or conspirator is "equally guilty" of first degree murder—was incorrect as a matter of state law. Nevertheless, the trial court echoed it in

5

its jury instructions. Bennett's petition turns on these jury instructions, and so we describe them in detail.

First, the trial court charged the jury on criminal conspiracy, in relevant part, as follows:

> Where two or more join in the commission of an unjustified assault which results fatally, *all are guilty* regardless of which one inflicts the mortal wounds. When two or more combine to commit a felony or to make an assault, and in carrying out the common purpose another is killed, the one who enters into the combination but does not personally commit the wrongful act *is equally responsible for the homicide* as the one who directly causes it.
>
> . . .
>
> Such responsibility . . . extend[s] even to a homicide which is the consequence of the natural and probable execution of the conspiracy *even though such homicide is not specifically contemplated by the parties*.

App. 602-03 (emphases added).

6

In response to a jury question the trial court later repeated this instruction.

The trial court also instructed the jury on accomplice liability, in relevant part, as follows: "[O]ne may be legally accountable for conduct of another not only if he is a co-conspirator, but also if he is an accomplice who aids and abets the commission of a crime." App. 603. "The degree of concert or collusion between parties to an illegal transaction means *the act of one is the act of all*." App. 604 (emphasis added).

The trial court further instructed the jury on murder, beginning with this introduction:

> Each defendant comes before you charged with murder and voluntary manslaughter.
>
> Now on this bill, you may find each defendant guilty of murder in the first degree, guilty of murder in the second degree, or guilty of murder in the third degree, or guilty of voluntary manslaughter, or not guilty.

App. 605.

Five paragraphs later, the trial court instructed the jury on first degree murder, which it defined as follows:

A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing. As used in this statute, intentional killing means among other things a willful, deliberate and premeditated killing.

A killing is willful and deliberate if the defendant consciously decided to kill the victim and it is premeditated if the defendant possessed a fully-formed intent to kill at the time when he acted and though there need not have been any appreciable amount of time between the time when the defendant first conceived the idea of killing and the time when he acted.

The design to kill can be formulated in a fraction of a second.

In determining whether or not the defendants committed said kind of intentional killing required for first degree murder, you should consider the testimony of expert witnesses, as well as all other evidence which may shed light on what was going on in the

> defendant's mind at the time of the alleged killing.
>
> If a defendant intentionally uses a deadly weapon on a vital part of the body, you may infer from this that the killing was intentional.
>
> Specific intent as well as malice may be inferred from the use of a deadly weapon on a vital part of the body.

App. 606-07.[3]

The jury convicted Bennett of first degree murder and related charges.[4] A penalty hearing followed. The

---

[3] The trial court also instructed the jury on second degree murder, third degree murder and voluntary manslaughter. In response to a jury question, the trial court read back the first, second and third degree murder instructions.

[4] In addition to first degree murder, the jury convicted Bennett of conspiracy, possession of an instrument of crime and two counts of robbery. The trial court granted a judgment of acquittal on a third robbery count. Only the first degree murder conviction is at issue in Bennett's habeas corpus petition. *See Laird v. Horn*, 414 F.3d 419, 430 (3d Cir. 2005); *Everett v. Beard*, 290 F.3d 500, 516 (3d Cir. 2002), *abrogated on other grounds by Porter v. McCollum*, 558 U.S. 30 (2009).

Commonwealth sought the death penalty, despite stipulating that Bennett was nineteen years old at the time of the crime and had no significant criminal history. After additional deliberation, the jury returned a sentence of life imprisonment. On June 1, 1993, the trial court formally sentenced Bennett to life imprisonment without the possibility of parole. *Bennett VI*, 57 A.3d at 1189.[5]

### B.    Post-Conviction Proceedings

---

[5]    The trial court imposed a life sentence for first degree murder. It also sentenced Bennett to ten to twenty years' imprisonment on each of the robbery counts, and two and half to five years' imprisonment on possession of an instrument of crime. It imposed a suspended sentence on conspiracy. As to whether these sentences were to run concurrently or consecutively, this Court lacks the written sentencing order because the trial court did not provide the state court record. According to the notes of testimony, the trial court stated orally, "on Bill 22 of July Term, 1990, charging you with first degree murder, I impose a sentence of life imprisonment, and on Bill 24 of July Term, 1900, I impose a sentence of 10 to 20 years to run concurrently. Bill 21 is the robbery bill of July Term, 1992. I will impose a sentence of 10 to 20 years, to run consecutive to Bill 24 but also concurrent with the life term and on possession of instruments of crime, I will impose a two and a half to five year sentence also to run concurrently." App. Sentencing Tr. 20, June 1, 1993.

Bennett did not file a direct appeal. In 1995, he filed a *pro se* petition under the Pennsylvania Post-Conviction Relief Act (PCRA), in which he asserted, *inter alia*, two claims relevant to this appeal. First, Bennett asserted that the trial court violated his state and federal due process rights by instructing the jury that he could be convicted of first degree murder without the specific intent to kill. Second, Bennett asserted that trial counsel was ineffective for failing to object to the trial court's erroneous jury instructions.[6]

In 1999, the trial court dismissed Bennett's PCRA petition. Bennett filed an appeal. In 2000, the Superior Court dismissed the PCRA appeal because post-conviction counsel failed to file a brief. Bennett subsequently filed a second PCRA petition seeking to reinstate his right to appeal his first PCRA petition.

Meanwhile, as Bennett's PCRA was winding through the courts, his conspirator, Wyatt, reached the Superior Court on post-conviction proceedings. Wyatt was the other man sitting with Bennett in the getaway car during the botched robbery. *See Bennett VI*, 57 A.3d at 1187. The two were tried and convicted together. In 2001, the Superior Court granted Wyatt's PCRA petition and vacated his first degree murder conviction. The court found that that trial court's jury instructions "improperly permitted the jury to find [Wyatt] guilty of first degree murder without evidence to support that finding," and that counsel was ineffective for failing to object to the flawed charge. *Commonwealth v. Wyatt*, No. 2050 EDA 1999, *15, 782 A.2d 1061 (Pa. Super. Jul. 16, 2001)

---

[6] Post-conviction counsel also filed an amended PCRA petition.

11

(table) (App. 228). The Commonwealth sought allowance of appeal, but the Pennsylvania Supreme Court denied the petition. *Commonwealth v. Wyatt*, No. 521 EAL 2001, 809 A.2d 904 (Pa. Oct. 15, 2002) (table). Wyatt later pled guilty to third degree murder, a lesser offense. *See Commonwealth v. Wyatt*, 115 A.3d 876, 878 (Pa. Super. 2015); *see also* 18 Pa. Cons. Stat. §§ 1102(d), 2502(c).

Shortly after Wyatt won PCRA relief, the trial court reinstated Bennett's right to appeal the denial of his PCRA petition. Bennett appealed to the same Superior Court that had recently granted Wyatt's petition. In 2004, however, the en banc Superior Court denied relief on procedural grounds. It found that Bennett's PCRA petition, through which the trial court had reinstated his appellate rights, was untimely. *Commonwealth v. Bennett (Bennett I)*, 842 A.2d 953, 954 (Pa. Super. 2004) (en banc), *vacated by Commonwealth v. Bennett (Bennett II)*, 930 A.2d 1264 (Pa. 2007). In an opinion by now-Pennsylvania Supreme Court Justice Todd, the en banc Superior Court expressed its opinion of the merits in the strongest possible language:

> There is no question that Tony Bennett was entitled to a new trial: the accomplice liability charge given at his murder trial was erroneous, and his codefendant at trial was granted a new trial on that basis. . . . [N]o appellate court has yet addressed Bennett's meritorious claim, apparently due to the serial ineffectiveness of counsel.

> Bennett thus stands convicted of first-degree murder, and sentenced to life imprisonment, based on an erroneous accomplice liability charge, for a killing which occurred when his co-conspirators robbed a jewelry store while he waited in the getaway car.

*Bennett I*, 842 A.2d at 954.

The Superior Court further opined that "there is no doubt that there is merit to this claim," *id.* at 956, that "Bennett has been denied appellate review of a clearly meritorious issue," *id.* at 957, and that "we are in the unenviable position of denying relief where there is no doubt that justice requires such relief," *id.* at 959.

In 2007, the Pennsylvania Supreme Court reversed the Superior Court's ruling that Bennett's PCRA petition was time-barred. *Bennett II*, 930 A.2d at 1275. The Court characterized the decision as "significant" because the Superior Court had granted Wyatt relief "due to the trial court's erroneous accomplice liability instruction." *Id.* at 1266 n.3.

On remand, the trial court again reinstated Bennett's right to appeal the denial of his PCRA petition. Bennett appealed. The Superior Court issued a procedural ruling in his favor. It vacated the dismissal of Bennett's PCRA petition and remanded for consideration of his ineffective assistance of counsel claim. *Commonwealth v. Bennett*

13

*(Bennett III)*, No. 343 EDA 2008, at *19, 964 A.2d 428 (Pa. Super. Oct. 17, 2008) (table) (App. 164). The Superior Court did not separately address Bennett's due process claim.

On remand, Bennett won PCRA relief. The trial court vacated his conviction for first degree murder and ordered a new trial on that charge. It found that the jury instructions violated Bennett's "state and federal constitutional rights to Due Process," and that Bennett's trial counsel was ineffective for failing to object to them. App. 176.

Bennett again won PCRA relief on the Commonwealth's appeal. *Commonwealth v. Bennett (Bennett IV)*, 19 A.3d 541, 542 (Pa. Super. 2011). The Superior Court held that the jury instructions on conspiracy and accomplice liability "did not tell the jurors that they needed to find Bennett possessed the specific intent to kill before they could convict him of first-degree murder." *Id.* at 544. Rather, "the charge could likely have led jurors to conclude that Bennett, by being an accomplice and/or a conspirator in the robbery, was therefore equally responsible with the shooter for first-degree murder, even without proof that Bennett himself had the specific intent to kill." *Id.* Trial counsel was ineffective for failing to object. *Id.* at 542.

Still, Bennett did not get relief. In 2011, the Pennsylvania Supreme Court granted the Commonwealth's petition for allowance of appeal, despite having denied the same request in Wyatt's case nine years earlier. *Compare Commonwealth v. Bennett (Bennett V)*, 32 A.3d 586 (Pa. 2011) (per curiam), *with Commonwealth v. Wyatt*, No. 521 EAL 2001, 809 A.2d 904 (Pa. Oct. 15, 2002) (table). It agreed to consider the question posed by the Commonwealth:

14

whether "overturning [Bennett's] first-degree murder conviction on the basis of a supposedly defective accomplice liability instruction overlook[s] and contradict[s] th[e Pennsylvania Supreme] Court's precedent." *Bennett V*, 32 A.3d at 587.

In 2012, the Pennsylvania Supreme Court reversed the Superior Court's grant of relief. *Bennett VI*, 57 A.3d at 1187. Then-Chief Justice Castille wrote an opinion for a three-Justice majority.[7] The Pennsylvania Supreme Court found that the only issue before it was the ineffective assistance of counsel claim. *See id.* at 1187 n.1, 1195. As to Bennett's "underlying" due process challenge to the jury instructions, the Court stated in passing that the issue was "defaulted," *id.* at 1193, or "waived," *id.* at 1204, but did not explain why this was so. The Pennsylvania Supreme Court addressed the jury instructions within its analysis of the ineffective assistance of counsel claim. It concluded that "in light of both the charge when read as a whole and the factual circumstances of this case," the jury instructions did not violate state precedent. *Id.*

---

[7]  In 1990, when this crime was committed and Bennett charged, Chief Justice Castille was the elected District Attorney of Philadelphia, where the crime took place. Chief Justice Castille left his position as District Attorney in 1991. Bennett's capital jury trial took place in 1992. *Cf. Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (holding that Chief Justice Castille was obligated to recuse himself where he had "significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case"). It is not known how significant was his involvement when he was the District Attorney.

at 1196. It followed that counsel was not deficient in failing to object. *See id.* at 1203.[8]

The Pennsylvania Supreme Court did not address Bennett's federal due process challenge to the jury instructions. Although Bennett cited several decisions of our Court, the Pennsylvania Supreme Court found that they were irrelevant to the state law question it was deciding. *Id.* at 1203 ("[W]e are not bound by the decisional law of the lower

---

[8] When reviewing the charge as whole, the Pennsylvania Supreme Court emphasized the murder instruction. *See Bennett VI*, 57 A.3d at 1200. This portion of its opinion inaccurately quoted the record. Specifically, the state court spliced together two disparate portions of the murder charge. First, in the introduction, the trial court instructed the jury that "[e]ach defendant comes before you charged with murder and voluntary manslaughter." App. 605. Second, five paragraphs later, the trial court instructed the jury on first degree murder, directing it to determine whether "the defendant possessed a fully-formed intent to kill at the time when he acted . . . ." App. 606. The Pennsylvania Supreme Court combined these quotes in one sentence. It stated that the trial court "informed the jury that 'each' defendant could be found guilty of first-degree murder only if 'the defendant possessed a fully-formed intent to kill at the time when he acted.'" *Bennett VI*, 57 A.3d at 1200. This misstatement of the record was a clear error; the jury never heard that "each" defendant must have the specific intent to kill.

16

federal courts, construing Pennsylvania law.").[9]  Rather, the Pennsylvania Supreme Court relied on state precedent to overturn the grant of PCRA relief.  *Id.* at 1197-99 (citing *Commonwealth v. Thompson*, 674 A.2d 217, 223 (Pa. 1996) and *Commonwealth v. Simpson*, 754 A.2d 1264, 1275-76 (Pa. 2000)).  The Pennsylvania Supreme Court held that the Superior Court erred by relying on another state decision, *Huffman*, 638 A.2d at 964, which the Pennsylvania Supreme Court distinguished.  *Bennett VI*, 57 A.3d at 1187; *see also id.* at 1203 ("As we have made clear, the instant case is simply not controlled by *Huffman . . . .*").

Justice Saylor, now Chief Justice of the Pennsylvania Supreme Court, and Justice McCaffrey concurred.  *Id.* at 1206 (Saylor, C.J., concurring).  They opined that the trial court's jury instructions "could be taken as overriding the specific-intent requirement for first-degree murder."  *Id.* at 1207.  They were particularly concerned that the jury could have convicted Bennett of first degree murder because he was "an accomplice or conspirator in *some other crime.*"  *Id.* (emphasis in original).  Specifically, the concurring Justices emphasized that the jury instructions stated that: (1) "[w]hen two or more join in the commission of an unjustified assault which results fatally, *all are guilty*"; (2) a co-conspirator is "*equally responsible* for the homicide" as the principal; and (3) "[s]uch responsibility . . . extend[s] even to a homicide which is the consequence of the natural and probable execution of the conspiracy *even though such homicide is not*

---

[9]  While the state court referred to our decision in *Everett* in a footnote, it merely held that the case was factually distinguishable.  *Bennett VI*, 57 A.3d at 1203 n.10 (citing *Everett*, 290 F.3d at 504).

17

*specifically contemplated by the parties.*" *Id.* at 1206-07 (emphases, ellipses and second brackets in original) (quoting *Bennett VI*, 57 A.3d at 1188-89).

However, the concurring Justices found that they were "bound" by Pennsylvania law. *Bennett VI*, 57 A.3d at 1208 (Saylor, C.J., concurring). Prior state court decisions, they explained, had established "that a trial court's reference to 'the defendant' in a jury charge delineating the requirement of specific intent to kill to support a first-degree-murder conviction ameliorates potential ambiguities which might otherwise arise out of accomplice or coconspirator liability instructions." *Id.* They concluded that, under state law, Bennett's claim lacked merit, but there remained a claim "to be litigated in the federal courts under due process theory." *Id.* at 1208 n.3 (internal quotation marks omitted).

## C.    Habeas Corpus Proceedings in the District Court

After his PCRA relief was reversed, Bennett filed a timely *pro se* petition for a writ of habeas corpus. He raised two claims in the District Court: (1) that he was deprived of due process under the United States Constitution because the trial court's jury instructions erroneously relieved the Commonwealth of its burden to prove the specific intent to kill, and (2) that trial counsel was ineffective for failing to object to the flawed jury instructions. Bennett asserted that he was entitled to *de novo* review because the state court did not adjudicate his federal due process claim on the merits. In response, the Commonwealth argued that Bennett's claims had been decided on the merits, and that he could not overcome the standard of review of the Antiterrorism and

18

Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1).

The District Court referred the matter to a Magistrate Judge who issued a report and recommendation. As to Bennett's underlying due process claim, the Magistrate Judge agreed with Bennett that the conspiracy and accomplice liability jury instructions "do seemingly relieve the Commonwealth of the burden of proving that Bennett had the specific intent to kill, rather than the intent to rob the store." App. 21. However, she recommended denying relief under 28 U.S.C. § 2254(d)(1). The Magistrate Judge nevertheless observed that numerous state judges had questioned "the propriety of the charge given in this case in well-reasoned decisions," and so recommended granting a certificate of appealability "on Bennett's due process claim." App. 30. The Magistrate Judge recommended denying Bennett's ineffective assistance of counsel claim without a certificate of appealability. The District Court adopted the Report and Recommendation and granted the certificate of appealability in part and denied it in part.

### D.    Bennett's Habeas Corpus Appeal to this Court

Bennett filed this timely appeal. Consistent with the certificate of appealability, Bennett seeks our review of one claim—his federal due process challenge to the trial court's jury instructions. He does not appeal the denial of his ineffective assistance of counsel claim.

The Commonwealth's response is surprisingly incongruous. It has chosen not to respond to Bennett's due

process claim—the only claim raised on appeal. Instead, it takes the unusual position that Bennett must be raising an ineffective assistance of counsel claim. The Commonwealth asserts as much repeatedly in its brief. For example, it contends that "Bennett spends 40 pages arguing about the quality of the jury instructions []presumably to make a point that trial counsel's decision not to object was a failure of performance." Br. for Appellees at 54. This is incorrect. Bennett addresses the quality of the jury instructions because the claim certified on appeal is a due process challenge to those instructions.

The Commonwealth offers an equally unusual explanation for its approach. It asserts that Bennett's claim must be "a *Strickland*-ineffectiveness claim [because] [t]he Pennsylvania Supreme Court identified it as such in the first page of its opinion." *Id.* at 24. Again, this is incorrect. The issue on appeal is the claim authorized by the certificate of appealability—a due process challenge to the trial court's jury instructions. *See* 28 U.S.C. § 2253(c)(3); *see also* Fed. R. App. P. 22(b); Local App. R. 22.2. Therefore, this is the claim we will address.[10]

## II.    Exhaustion

Under AEDPA, a habeas petitioner must "exhaust[] the remedies available" in state court. 28 U.S.C.

---

[10] The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We exercise plenary review of the District Court's decision. *Showers v. Beard*, 635 F.3d 625, 628 (3d Cir. 2011).

§ 2254(b)(1)(A). To do so, the petitioner must "'fairly present' . . . a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). In Pennsylvania, a defendant "exhausts his state remedies for a federal claim either by raising the claim on direct appeal or in a petition for collateral relief under the PCRA." *Wilkerson v. Superintendent*, 871 F.3d 221, 228-29 (3d Cir. 2017); *see also Mathias v. Superintendent*, 876 F.3d 462, 479-80 (3d Cir. 2017) (holding that the petitioner exhausted his federal due process claim on PCRA review).

As to Bennett, the Commonwealth did not raise exhaustion before the District Court or in its opening brief to this Court. Although it did purport to raise exhaustion in two letters styled under Federal Rule of Appellate Procedure 28(j), the argument falls outside the bounds of that rule. *See United States v. Hoffecker*, 530 F.3d 137, 163 (3d Cir. 2008) (holding that a party cannot use a Rule 28(j) letter to raise additional arguments omitted from an opening brief); *United States v. Khorozian*, 333 F.3d 498, 506 n.7 (3d Cir. 2003) (declining to consider new arguments outside the scope of Rule 28(j)).

We need not determine whether the Commonwealth expressly waived the exhaustion requirement because we hold that Bennett did exhaust his federal due process claim. *See* 28 U.S.C. § 2254(b)(3); *see also Sharrieff v. Cathel*, 574 F.3d 225, 230 (3d Cir. 2009) ("Section 2254(b)(3) requires that a state's waiver of exhaustion be express, but it does not demand the invocation of any 'magic words.'"). Bennett fairly presented his federal claim on PCRA review by citing

21

the relevant provision of the United States Constitution and federal cases supporting his argument. *See Wilkerson*, 871 F.3d at 229 (citing *McCandless*, 172 F.3d at 261-62).[11]

---

[11] We are mindful that Bennett's counsel did not object to the challenged jury instructions and did not file a direct appeal. Perhaps for these reasons the Pennsylvania Supreme Court stated without explanation that the underlying due process challenge to the jury instructions was "defaulted" or "waived." *Bennett VI*, 57 A.3d at 1193, 1204. The Commonwealth, however, has failed to raise and therefore waived any potential defense of procedural default.

"The doctrine of procedural default prohibits federal courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment." *Bey v. Superintendent*, 856 F.3d 230, 236 (3d Cir. 2017) (quoting *Fahy v. Horn*, 516 F.3d 169, 187 (3d Cir. 2008)); *see also Cone v. Bell*, 556 U.S. 449, 465 (2009). "[P]rocedural default is normally a defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter." *Trest v. Cain*, 522 U.S. 87, 89 (1997) (internal quotation marks, alteration and citation omitted); *see also Lee v. Kemna*, 534 U.S. 362, 376 n.8 (2002) (stating that state waived procedural default by failing to raise the argument in the appellate court or in opposition to certiorari); *Showers v. Beard*, 635 F.3d 625, 629 (3d Cir. 2011) (procedural default waived); *Smith v. Horn*, 120 F.3d 400, 408-09 (3d Cir. 1997) (same). Unlike exhaustion, waiver of procedural default need not be express. *Cf.* 28 U.S.C. § 2254(b)(3).

In Bennett's case, the Commonwealth did not preserve the defense of procedural default before either the District

## III. Standard of Review

AEDPA's Section 2254(d) limits the ability of a federal court to grant habeas corpus relief to a petitioner based upon a federal constitutional claim that was "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d). If Section 2254(d) applies, habeas relief shall not be granted unless the adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

Court or this Court. In the District Court, the Commonwealth asserted the opposite position—that the Pennsylvania Supreme Court had adjudicated Bennett's federal due process claim on the merits. On appeal, the Commonwealth did not argue procedural default. At the most, the Commonwealth asserted—without citation, in a footnote—that "only the *Strickland* claim is not defaulted and properly before this Court." Br. for Appellees 20 n.9. We "refuse to take cognizance of arguments that are made in passing without proper development." *Johnson v. Williams*, 568 U.S. 289, 299 (2013); *see also Hoffecker*, 530 F.3d at 162.

Thus, the defense of procedural default is waived. We do not reach the question whether the requirements of procedural default would have been satisfied. *See Munchinski v. Wilson*, 694 F.3d 308, 335 (3d Cir. 2012) (holding that state court "did not 'clearly and expressly' rely" on state procedural rule to deny PCRA relief). Nor do we determine whether Bennett could have overcome any default.

> determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was
> based on an unreasonable
> determination of the facts in light
> of the evidence presented in the
> State court proceeding.

*Id.*

If a claim was not adjudicated on the merits in state court, we review legal questions and mixed questions of law and fact *de novo*. *Cone*, 556 U.S. at 472 (citing *Rompilla v. Beard*, 545 U.S. 374, 390 (2005), and *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)); *see also Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). "However, the state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence." *Appel*, 250 F.3d at 210 (citing 28 U.S.C. § 2254(e)(1)).[12]

## A. Legal Standard: Adjudication on the Merits

Because it dictates the standard of review, a predicate question in habeas corpus proceedings is whether the state court adjudicated a claim on the merits. A judgment is "'on the merits' only if it was 'delivered after the court . . . heard and *evaluated* the evidence and the parties' substantive

---

[12] The parties agree that the operative state court decision is the Pennsylvania Supreme Court decision reversing the grant of PCRA relief, *Bennett VI*, 57 A.3d at 1187.

arguments.'" *Williams*, 568 U.S. at 302 (emphasis and ellipsis in original). "On the merits" means, in this context, review of the "intrinsic rights and wrongs" of the matter. *Id.* (emphasis and internal quotation marks omitted).

In some cases, "a state court issues an order that summarily rejects without discussion all the claims raised by a defendant." *Id.* at 293 (emphasis omitted) (citing *Harrington v. Richter*, 562 U.S. 86 (2011)). In those circumstances, "the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." *Williams*, 568 U.S. at 293.

There is also a closely related situation, addressed in *Williams*, where the "state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question." *Id.* at 292. Under these circumstances, the state court is silent as to the reasons for denying the federal claim. It "follows logically" that the *Richter* rule applies. *Id.* at 293. That is, the same presumption—that the federal claim was adjudicated on the merits—applies whether the state court does not address "*any* of the defendant's claims" or "some but not all of a defendant's claims." *Id.* at 298 (emphasis in original); *see also Dennis v. Secretary*, 834 F.3d 263, 312 (3d Cir. 2016) (en banc) (applying *Williams* presumption to claim of cumulative prejudice). *But see James v. Ryan*, 733 F.3d 911, 915 (9th Cir. 2013) (distinguishing *Richter* and *Williams*).

The *Williams* presumption that a federal claim was adjudicated on the merits is rebuttable. It applies only "in the absence of any indication or state-law procedural principles to the contrary." *Williams*, 568 U.S. at 298 (quoting *Richter*,

25

562 U.S. at 99). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Richter*, 562 U.S. at 99-100.

*Williams* rejected as "go[ing] too far" the state's argument for an irrebuttable presumption. *Williams*, 568 U.S. at 301. The Supreme Court explained that both parties may attempt to rebut the presumption that a federal claim was adjudicated on the merits. A petitioner may attempt to rebut the presumption in order to obtain *de novo* review. *Id.* at 301-02. The state may attempt to rebut the presumption in order to show that a federal claim was defaulted. *Id.* at 302.

*Williams* set forth a non-exhaustive list of "other explanation[s] for the state court's decision" sufficient to rebut the presumption that a federal claim was adjudicated on the merits. *Richter*, 562 U.S. at 100. They include the following: A state court may have "inadvertently overlooked" the federal claim. *Williams*, 568 U.S. at 303; *see also Brown v. Romanowski*, 845 F.3d 703, 711-12 (6th Cir. 2017); *Bester v. Warden*, 836 F.3d 1331, 1336-37 (11th Cir. 2016). A state court may have applied a state standard that is "in at least some circumstances . . . *less* protective" or "quite different from the federal standard." *Williams*, 568 U.S. at 301 (emphasis in original); *see also Ashburn v. Korte*, 761 F.3d 741, 751 (7th Cir. 2014). It may have disregarded the federal claim based upon a belief—correct or not—that the federal claim was not fairly presented. *Williams*, 568 U.S. at 302-03; *see also Barton v. Warden*, 786 F.3d 450, 461-62 (6th Cir. 2015). Where the *Williams* presumption is rebutted for one of these, or any other reason, review of the claim is *de novo*. *Williams*, 568 U.S. at 301-02.

26

### B.  Bennett's Due Process Claim Not Adjudicated on the Merits

In Bennett's case, we begin by considering whether the *Williams* presumption applies.  We conclude that it does not because the Pennsylvania Supreme Court expressly stated that it did not perceive there to be any federal claim presented.  Accordingly, this is not a case where the state court "rule[d] against the defendant and issue[d] an opinion that addresse[d] some issues but d[id] not expressly address the federal claim in question."  *Id.* at 292.  Rather, the Court provided an "explicit explanation of its own decision," and so the *Williams* presumption is inapplicable.  *James*, 733 F.3d at 916.[13]

The Pennsylvania Supreme Court's own explicit statements further establish that Bennett's federal due process claim was not adjudicated on the merits.  *See Cone*, 556 U.S. at 472.  This is apparent for several reasons.  To begin with, the Pennsylvania Supreme Court granted review of Bennett's PCRA petition only on the state law question presented by the Commonwealth—whether "overturning [Bennett's] first-degree murder conviction on the basis of a supposedly defective accomplice liability instruction overlook[s] and contradict[s] th[e Pennsylvania Supreme] Court's precedent." *Bennett V*, 32 A.3d at 587.  It characterized the "underlying" federal due process claim as "defaulted," while providing no explanation for this statement.  *Bennett VI*, 57 A.3d at 1193.  The Court then addressed the ineffective assistance claim as

---

[13] Moreover, as explained below, we would apply *de novo* review even if the *Williams* presumption were applicable because Bennett has rebutted it.

relating exclusively to counsel's failure to object on state law grounds and did not acknowledge or address any deficiency or prejudice in counsel's failure to raise a federal due process claim. *Id.* at 1196-1203. It held that Bennett's PCRA petition lacked merit because it was in conflict with "[the Pennsylvania Supreme Court's] developed case law." *Id.* at 1202. It identified the error of the lower state courts in granting PCRA relief as a "failure to consider controlling, subsequent cases by th[e Pennsylvania Supreme] Court." *Id.* at 1203. Indeed, the Court even said that to the extent Bennett cited federal cases, they were not binding in the context of "construing Pennsylvania law." *Id.*

Furthermore, even if the *Williams* presumption were to apply, we would conclude that Bennett has rebutted it. Applying the *Williams* presumption, the question that follows is whether Bennett has rebutted the presumption that his federal claim was adjudicated on the merits. He has because "the evidence leads very clearly to the conclusion that [the] federal claim was inadvertently overlooked in state court." *Williams*, 568 U.S. at 303. For the reasons above, there is no ambiguity as to whether the Pennsylvania Supreme Court resolved the federal due process claim on the merits; the Court made clear that it overlooked it. It expressly declined to rule on Bennett's federal claim, and held that it "need not review and compare each of the federal cases" cited by Bennett because it was deciding a state law question. *Bennett VI*, 57 A.3d at 1203; *see also id.* (stating that "we are not bound by the decisional law of the lower federal courts, construing Pennsylvania law"); *id.* at 1193 (characterizing the "underlying" due process challenge as "defaulted"). Because the Court made a "clear demarcation" between the state and federal questions and ruled on the merits of only the former,

28

the *Williams* presumption is rebutted. *Brown*, 845 F.3d at 712 (holding that federal claim was overlooked under *Williams*, as evidenced by the fact that the state court expressly addressed all claims in the petitioner's original motion, but none in his amended motion).[14] Therefore, we will review Bennett's due process claim *de novo*.[15]

[14] We note, furthermore, that unlike *Williams* the Pennsylvania Supreme Court did not "underst[an]d itself to be deciding a question with federal constitutional dimensions." *Williams*, 568 U.S. at 305. The Court relied upon two state cases, *Thompson* and *Simpson*, which do not have federal constitutional underpinnings. *See Bennett VI*, 57 A.3d at 1198-99 (citing *Thompson*, 674 A.2d at 223, and *Simpson*, 754 A.2d at 1275-76). The Pennsylvania state case that arguably does have federal constitutional underpinnings is *Huffman*, which cites *In re Winship* for the proposition that a meritorious jury instruction claim did not amount to harmless error. *Huffman*, 638 A.2d at 963 (citing *In re Winship*, 397 U.S. 358 (1970)). *Huffman*, however, is the very case that the Pennsylvania Supreme Court held was inapplicable to Bennett. *Bennett VI*, 57 A.3d at 1187; *see also id.* at 1203 ("As we have made clear, the instant case is simply not controlled by *Huffman* . . . ."). As Chief Justice Saylor put it, "the only surviving vestige of *Huffman* is that which remains to be litigated in the federal courts under due process theory." *Bennett VI*, 57 A.3d at 1208 n.3 (Saylor, C.J., concurring) (quoting *Commonwealth v. Jones*, 912 A.2d 268, 297 (Pa. 2006) (Saylor, C.J., concurring)).

[15] In reaching this conclusion, we are mindful of the Supreme Court's observation that having a less protective state standard would "provide no guidance to state trial judges

## IV. Analysis of the Merits

While the state may choose how to define first degree murder, *McMillan v. Pennsylvania*, 477 U.S. 79, 85 (1986), the Constitution requires proof beyond a reasonable doubt of every element necessary to constitute the crime, *In re Winship*, 397 U.S. at 364. Due process is violated when a jury instruction relieves the government of its burden of proving every element beyond a reasonable doubt. *See Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009); *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979).

Under the federal due process standard, we ask whether there is "some 'ambiguity, inconsistency, or

bound to follow both state and federal law." *Williams*, 568 U.S. at 305. This may indeed be the case in Pennsylvania. In fact, Chief Justice Saylor has cautioned the state trial courts to follow the federal due process standard, because the alternative—following state law—"risks a needless waste of untold resources on the part of the Commonwealth, defense attorneys, and the courts" when those cases are challenged on due process grounds. *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1158 (Pa. 2012) (Saylor, C.J., concurring). Indeed, Pennsylvania's suggested jury instructions also appear to exceed the requirements of state law, although that issue is not before us. *See Bennett VI*, 57 A.3d at 1201 n.9 (noting that the standard jury instructions "now include a specific charge related to liability for the conduct of another person for the crime of first-degree murder for both accomplice and conspiracy liability" but reiterating that "these are merely suggested instructions").

deficiency' in the instruction, such . . . that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Sarausad*, 555 U.S. at 190-91 (quoting *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam), and *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990))). "In making this determination, the jury instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Id.* at 191 (quoting *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973))).

Under federal law, "[l]anguage that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." *Francis v. Franklin*, 471 U.S. 307, 322 (1985). "While a single defect does not necessarily make an instruction erroneous, . . . other language in the instruction does not always serve to cure the error. This is so even when other language correctly explains the law." *Bey*, 856 F.3d at 241 & n.54 (ellipsis in original) (quoting *Whitney v. Horn*, 280 F.3d 240, 256 (3d Cir. 2002) (citing *Franklin*, 471 U.S. at 222)). This is because "[a] reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." *Franklin*, 471 U.S. at 322. As such, there is a reasonable likelihood that the jury applied the instructions incorrectly in violation of the right to due process. *Id.* at 325.[16] This Court has repeatedly reaffirmed this longstanding

---

[16] This Court recently noted a potential "tension" between *Franklin*, 471 U.S. at 322, and a subsequent per

31

principle.  *See Bey*, 856 F.3d at 241; *Laird*, 414 F.3d at 428; *Bronshtein*, 404 F.3d at 712; *Whitney*, 280 F.3d at 256.

As to jury instructions on the specific intent to kill, our Court is troubled by the likelihood that the instructions as a whole could lead a jury to believe that an accomplice or conspirator to one crime is guilty of first degree murder despite having no specific intent to kill.  Indeed, we have repeatedly identified due process violations for this very reason.  *See, e.g.*, *Laird*, 414 F.3d at 427 (stating that "the jury could easily have convicted Laird of first-degree murder based on his conspiring with Chester to kidnap or assault"); *Bronshtein*, 404 F.3d at 711 (noting that "the jury could find Bronshtein guilty of first-degree murder if it found that he had conspired to commit the robbery"); *Smith*, 120 F.3d at 414 (holding that there was a reasonable likelihood that the

---

curiam decision, *Middleton*, 541 U.S. at 437-38, but declined to resolve it.  *Mathias*, 876 F.3d at 478.  We now conclude that *Middleton* did not overrule *Franklin*.  The Supreme Court has cautioned the Courts of Appeals not to conclude that its precedent has been overturned by implication, and *Middleton* did not overrule *Franklin* or even refer to it.  *Agostini v. Felton*, 521 U.S. 203, 237 (1997).  Moreover, *Middleton* did not directly address whether there had been a federal due process violation, but rather only whether the state court's application of federal law was objectively unreasonable under 28 U.S.C. § 2254(d)(1).  541 U.S. at 436.  This explains why our Court continues to apply *Franklin* as binding precedent, and has done so repeatedly post-*Middleton*.  *See Bey*, 856 F.3d at 241 & n.54; *Laird*, 414 F.3d at 428; *Bronshtein*, 404 F.3d at 712.

jurors convicted Smith of first degree murder because they found that he was an accomplice to robbery).[17]

---

[17]    In contrast, Pennsylvania state law construes the instructions "as a whole" in a particular way—one highly permissive of instructional errors regarding the specific intent to kill of conspirators or accomplices. *Thompson*, 674 A.2d at 219 (internal quotation marks omitted). Its permissive approach is this: under the state standard, the instructions as a whole survive review, so long as an erroneous charge on the specific intent to kill is paired with standard definitions— such as the standard definitions of accomplice liability and conspiracy, *Commonwealth v. Speight*, 854 A.2d 450, 460-61 (Pa. 2004), or the standard definition of accomplice liability and a statement that first degree murder is intentional, *Commonwealth v. Daniels*, 963 A.2d 409, 431-32 (Pa. 2009); *Commonwealth v. Cox*, 863 A.2d 536, 550-51 (Pa. 2004). Put more critically, state law relies on the inclusion of standard definitions to obviate the grant of relief on misleading instructions regarding the specific intent to kill. *Jones*, 912 A.2d at 296 (Saylor, C.J., concurring). State law thus rejects the argument that the inclusion of standard definitions only creates inconsistency and does not cure the error.

The problem is that, even with standard definitions, the instructions as a whole could lead a jury to believe that an accomplice or conspirator to a lesser crime is guilty of first degree murder despite having no specific intent to kill. For example, a jury could conclude that "an accomplice and/or a conspirator in [a] robbery . . . was thereby equally responsible with the shooter for first-degree murder, even without proof that [the defendant] himself had the specific intent to kill." *Bennett IV*, 19 A.3d at 544, *vacated by Bennett VI*, 57 A.3d at 1187. The Pennsylvania Supreme Court rejected this

33

In Bennett's case, the trial court's jury instructions on conspiracy and accomplice liability were deficient, or at the least ambiguous and inconsistent. The trial court repeatedly suggested that the jury could convict Bennett of first degree murder based upon the shooter's specific intent to kill. It instructed the jury that where conspirators join together to commit an "unjustified assault which results fatally, all are guilty." App. 602. It instructed the jury that when conspirators "combine to commit a felony or to make an assault, and in carrying out the common purpose another is killed, the one who enters into the combination but does not personally commit the wrongful act is equally responsible for the homicide as the one who directly causes it." *Id.* It instructed the jury that a conspiratorial liability "extend[s] even to a homicide . . . even though such homicide is not specifically contemplated." App. 603. It instructed the jury that, among accomplices, "the act of one is the act of all." App. 604.

Reviewing these instructions in the context of the trial record, we conclude that there is "'a reasonable likelihood' that the jury applied the[se] instruction[s] in a way that relieved the State of its burden of proving" the specific intent to kill. *Sarausad*, 555 U.S. at 191 (quoting *Estelle*, 502 U.S. at 72 (quoting *Boyde*, 494 U.S. at 380)). The trial evidence established that Bennett "conspired . . . to rob a jewelry store in Philadelphia at gunpoint." *Bennett VI*, 57 A.3d at 1187. "Bennett supplied the loaded gun, but did not enter the store."

argument as "without merit" under state law. *Bennett VI*, 57 A.3d at 1203; *see also Cox*, 863 A.2d at 561-62 (Saylor, C.J., dissenting).

34

*Id.* He was sitting in the passenger seat of the getaway car when the shooter, Mayo, botched the robbery, killing the clerk. *Id.* In light of the record, there is "a reasonable likelihood" that the jury found that Bennett was guilty of first degree murder because he was a conspirator and accomplice to the robbery, not because it found that he possessed the requisite specific intent. *Sarausad*, 555 U.S. at 190-91 (internal quotation marks omitted); *see also Laird*, 414 F.3d at 427; *Smith*, 120 F.3d at 414.

We reach this holding having also considered the instructions as a whole, particularly the first degree murder charge. In this portion of the charge, the trial court instructed the jury that first degree murder is an intentional killing, wherein "the defendant consciously decided to kill the victim and . . . possessed a fully-formed intent to kill at the time when he acted." App. 606. It further instructed the jury that "[i]f a defendant intentionally uses a deadly weapon on a vital part of the body, you may infer from this that the killing was intentional." App. 607.

Bennett asserts that the first degree instruction was itself ambiguous because the "defendant" could have been the shooter, Mayo. He points out that Mayo is the only person who "use[d] a deadly weapon." *Id.* Bennett notes that Mayo began the trial as a defendant, and the Commonwealth continued to refer to Mayo as a "defendant" throughout its opening statement and closing argument. *See* App. 304 ("these two defendants T.S., Michael Mayo and . . . Johnson"); App. 309 ("The defendant Mayo"); App. 310 ("you will see what the defendant [Mayo] does"); App. 312 ("the defendant T.S., Michael Mayo, who is not here"); App. 570 ("the defendants, two of them being T.S., T.S., the man

35

who is not here"); App. 575 ("the defendant Mayo").[18]   The Pennsylvania Supreme Court, however, disagreed with this interpretation.  *Bennett VI*, 57 A.3d at 1202.  As such, the Commonwealth argues that we are bound by the state court's factual determination under 28 U.S.C. § 2254(e)(1).

Even if the state court's interpretation of the first degree murder charge is correct, the charge as a whole still violated Bennett's due process rights.  The first degree murder charge, at the most, contradicted the erroneous conspiracy and accomplice liability instructions.  Nothing in this language "or in the charge as a whole makes clear to the jury that one of these contradictory instructions carries more weight than the other.  Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity."  *Franklin*, 471 U.S. at 322; *see also Bey*, 856 F.3d at 241 & n.54; *Laird*, 414 F.3d at 428; *Bronshtein*, 404 F.3d at 712.  "A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict."  *Franklin*, 471 U.S. at 322.  Thus, it was reasonably likely that the jury applied the instructions to relieve the Commonwealth of its burden of proving that Bennett had the specific intent to kill.

Our conclusion is further supported by the arguments of counsel, although they "carry less weight with a jury" than the trial court's instructions.  *Sarausad*, 555 U.S. at 195 (quoting *Boyde*, 494 U.S. at 384).  In Bennett's case, the arguments compounded the instructional error.  The Commonwealth never argued that Bennett had the specific intent to kill.  To the contrary, in its opening statement, the

---

[18]  "T.S." is a nickname for Mayo.

prosecutor told the jury "lest you think I am crazy for saying [Bennett, Johnson and Wyatt] are guilty of first degree murder, when I told you that Michael Mayo fired the fatal shots . . . I will urge upon you that the law of conspiracy makes all of these defendants first degree murderers." App. 312-13. In closing, the prosecutor argued that "accomplices are equally guilty with the principal. First degree murder, intent to kill. There is no doubt, there can be no doubt that [the shooter] Michael Mayo intended to kill [the victim]. . . . Co-conspirators and accomplices are equally guilty with the principal." App. 591-92. These arguments increased the likelihood that the jury interpreted the charge so as to relieve the Commonwealth of its burden of proof.

Thus, we conclude that the trial court's jury instructions relieved the Commonwealth of its burden of proving that Bennett had the specific intent to kill, in violation of his right to due process under the United States Constitution. We are far from the first court to reach this conclusion. To the contrary, thirteen different Pennsylvania judges, in four separate decisions, have held or opined that these very jury instructions allowed the jury to convict of first degree murder without finding the specific intent to kill. *See Bennett I*, 842 A.2d at 954; *Bennett IV*, 19 A.3d at 542; *Wyatt*, No. 2050 EDA 1999, \*1; App. 167; *see also Bennett II*, 930 A.2d at 1266 n.3 (noting "the trial court's erroneous accomplice liability instruction"). Two additional concurring Pennsylvania Supreme Court justices recognized that the "charge could be taken as overriding the specific-intent requirement for first-degree murder." *Bennett VI*, 57 A.3d at 1207 (Saylor, C.J., concurring). We agree.

## V. Harmless Error

This brings us to the issue of harmless error. *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Under *Brecht*, this Court must grant habeas relief if an error "had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Mathias*, 876 F.3d at 480. If, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error[,] . . . the uncertain judge should treat the error, not as if it were harmless, but as if it affected the verdict." *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995); *see also Adamson v. Cathel*, 633 F.3d 248, 260 (3d Cir. 2011). A state may waive the harmless error defense by failing to assert it "timely and unequivocal[ly]." *Lam v. Kelchner*, 304 F.3d 256, 269 (3d Cir. 2002); *see also Gibbs v. Frank*, 387 F.3d 268, 277 n.7 (3d Cir. 2004).

In Bennett's case, the Commonwealth waived the harmless error defense by failing to assert it unequivocally on appeal. This is a product of its unusual approach to briefing this case. As explained above, it chose not to address Bennett's due process claim—the only issue on appeal. Instead, it addressed a hypothetical claim of ineffective assistance of counsel. In keeping with this approach, the Commonwealth did not argue harmless error. Instead, it argued that Bennett failed to prove prejudice for a hypothetical claim of ineffective assistance of counsel under *Strickland*, 466 U.S. at 694. This *Strickland* argument is not an "unequivocal" harmless error argument. *Lam*, 304 F.3d at 269. Moreover, to the extent the Commonwealth's *Strickland* argument left open the question whether it was asserting

38

harmless error, any such possibility was eliminated by the Commonwealth's Rule 28(j) letter of May 19, 2017. In this letter, the Commonwealth took the position that "*Strickland* prejudice and harmless error are different, and it is the former standard that applies to the only claim properly before the Court." Appellees' 28(j) Letter at 1 (May 19, 2017). *But cf. Whitney*, 280 F.3d at 258 n.18 (suggesting that "if a habeas petitioner meets the *Strickland* test, then he/she need not also demonstrate that the error was harmful"). Thus, the harmless error defense is waived.

Moreover, even if we were to reach harmless error, we would conclude that the due process violation is not harmless in the context of "the record as a whole." *Brecht*, 507 U.S. at 638. The trial evidence established that Bennett conspired to commit armed robbery, and was sitting in the passenger seat of the getaway car when the shooter, Mayo, botched the robbery and killed the clerk. *Bennett VI*, 57 A.3d at 1187. The Commonwealth never argued that Bennett had the specific intent to kill. Its theory of the case was that Bennett was guilty of first degree murder solely because he was an accomplice and conspirator. In its opening statement, the prosecutor told the jury "that the law of conspiracy makes all of these defendants first degree murderers." App. 313. In closing, the prosecutor argued that that "[c]o-conspirators and accomplices are equally guilty" of first degree murder. App. 592. The Commonwealth, "[h]aving repeatedly urged the jury to base its verdict on a theory predicated on a fundamental constitutional error, . . . cannot now seriously contend that that error had no 'substantial and injurious effect or influence' on the verdict." *Smith*, 120 F.3d at 419.

Nor would the error be harmless under *Bronshtein*. There we held that the trial court's jury instructions relieved the Commonwealth of its burden to prove the specific intent to kill, but that the error was harmless. 404 F.3d at 711-12. In *Bronshtein* it necessarily followed from the particular jury instructions, and the verdict of guilt on conspiracy to murder, that the jury "must have found . . . the specific intent to kill." *Id.* at 714; *see also Mathias*, 876 F.3d at 467, 480 (following *Bronshtein* where the jury convicted the defendant of conspiracy to commit first degree murder). This is not so in Bennett's case. Unlike *Bronshtein*, the Commonwealth charged Bennett with conspiracy generally, and the trial court instructed the jury that the object of the conspiracy was murder, robbery, possession of an instrument of crime, and a firearms violation. Therefore, we cannot infer anything about the specific intent to kill from the jury's conspiracy verdict. *See Laird*, 414 F.3d at 430 (distinguishing *Bronshtein*). The jury might have found that Bennett intended to participate in the robbery, and so was "equally responsible for the homicide," as the trial court erroneously instructed. App. 602.

Finally, we address the Commonwealth's argument that there is no *Strickland* prejudice to support a hypothetical claim of ineffective assistance of counsel. In its brief, the Commonwealth argues that Bennett could not prove prejudice for a hypothetical ineffectiveness claim under our decision in *Rainey v. Varner*, 603 F.3d 189, 203 (3d Cir. 2010). In *Rainey*, the petitioner asserted ineffective assistance of counsel for counsel's failure to challenge the sufficiency of the evidence for first degree murder. We held that even if the evidence were insufficient for first degree murder, the petitioner would have been convicted of second degree

murder, and would have received the same mandatory life sentence. *Id.* at 202. Therefore, *Rainey* held that the petitioner failed to establish *Strickland* prejudice. *Id.* at 203.

*Rainey* does not control Bennett's due process claim for two reasons. First, the Commonwealth has never argued that *Rainey* applies to the claim actually raised—a due process challenge to the trial court's jury instructions on the specific intent to kill. Therefore, any argument that *Rainey* applies to this claim is waived. Second, even if the argument were preserved, we would decline to extend *Rainey* outside of its context—a claim that counsel was ineffective for failing to challenge the sufficiency of the evidence for first degree murder, where the petitioner would nevertheless have been convicted of second degree murder, which required the same mandatory life sentence under state law. *Id.* at 201-02.[19]

---

[19] In declining to read *Rainey* outside of its context, we note that *Rainey* relied on three Supreme Court decisions for the proposition that *Strickland* prejudice requires a reasonable probability of "a different sentence." *Rainey*, 603 F.3d at 202 n.5. Each of the cited cases, however, addressed claims of ineffective assistance of counsel at the penalty phase. *Id.* (citing *Porter v. McCollum*, 558 U.S. 30, 41 (2009) (per curiam); *Wong v. Belmontes*, 558 U.S. 15, 20 (2009) (per curiam); *Wiggins v. Smith*, 539 U.S. 510, 536 (2003)). Even the Commonwealth, in opposing certiorari, read *Rainey* as a narrow decision that "certainly did not purport to redefine prejudice globally by adding a requirement of a more onerous sentence for all petitioners alleging guilt-phase ineffectiveness." Br. for Respondents in Opp'n to Pet. for Writ of Cert., *Rainey v. Walsh*, 562 U.S. 1286 (2011) (No.

Rather, we follow the ordinary rule that "the ultimate issue under either [the *Strickland* or *Brecht*] test reduces to determining what effect, if any, the erroneous instruction had on the jury's verdict." *Whitney*, 280 F.3d at 258. In making this determination, "[h]armless-error review looks . . . to the basis on which 'the jury *actually rested* its verdict.' . . . That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (citations omitted) (emphasis in original) (quoting *Yates v. Evatt*, 500 U.S. 391, 404 (1991)) (reviewing claim on direct appeal); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (holding that the denial of the right to counsel of one's choice is structural error not subject to harmlessness review because "[h]armless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe"); *Jones v. United States*, 527 U.S. 373, 404 (1999) (evaluating for harmless error purposes what "the jury in this case actually understood"). Accordingly, in *Laird* we rejected a *Brecht* harmless error argument because "we can not substitute ourselves for the jury by speculating about what portion of the testimony the jury believed." 414 F.3d at 429; *see also* 2-31 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 31.4(d) (2017) ("The determinative consideration under the *Brecht*/*Kotteakos* standard thus is not the strength of the evidence or the probability of conviction at a hypothetical retrial absent the

10-431), 2011 WL 663181, at *30 (alterations, emphasis and citation omitted). We agree.

42

error," but rather "whether the error substantially affected the actual thinking of the jurors or the deliberative processes by which they reached their verdict.").

Thus, for the reasons above, we conclude that the Commonwealth waived the harmless error defense and that, even if the argument were preserved, the due process violation was not harmless.

## VI. Conclusion

We will reverse the District Court's order denying habeas corpus relief and remand with instructions to grant a conditional writ of habeas corpus as to Bennett's conviction for first degree murder[20] so that the matter may be returned to state court for further proceedings consistent with this opinion.[21]

---

[20] Under *Laird*, "[o]ur holding in no way undermines the jury's guilty verdict on the remaining charges." *Laird*, 414 F.3d at 430 n.9; *see also Everett*, 290 F.3d at 516 (granting the writ "with regard to [the defendant's] conviction for first degree murder").

[21] The Court acknowledges and thanks the Drexel University Appellate Litigation Clinic for the skillful pro bono advocacy provided to Mr. Bennett in this appeal.